LOUIS E. ANDERSON ET AL. *v.*
EUGENE SAWYER ET AL.

[No. 98, September Term, 1974.]

*Decided December 16, 1974.*

The cause was argued before THOMPSON, MOYLAN and DAVIDSON, JJ.

*Randolph N. Blair* and *John S. Arnick* for appellants.

*William F. Mosner*, with whom were *Louis L. DePazzo* and *John R. Cicero* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Baltimore County, reversing a decision of the Baltimore County Board of Appeals (Board) which had denied a special exception for the construction of a funeral home on land zoned for residential use. We shall affirm the order of the Circuit Court requiring the grant of the Special exception.

The record shows that the subject property lies in a block bounded by Merritt Boulevard on the South, Merritt Avenue on the west, Sunberry Road on the north, and Meadow Lane on the east.[1] (See location plan, Exhibit 2, attached hereto.) The parcel, consisting of 1.5 $\pm$ acres of land, is

---

1. For purposes of this appeal, Merritt Boulevard and Sunberry Road are treated as running in an east-west direction.

comprised of five separate lots, three of which front on Merritt Boulevard and two of which front on Sunberry Road. It is zoned D.R.-5.5 (Density-Residential, 5.5 dwellings per acre).[2] The two easternmost lots fronting on Merritt Boulevard are developed with single-family homes. The remainder of the tract is undeveloped.

On the east and on the north the subject property is bounded by D.R.-5.5 land upon which single-family houses, ranging in price from $30,000 to $50,000, are located. On the west the site is adjoined by land, zoned B.R. in a C.N.S. district (Commercial, neighborhood shopping). That portion of the B.R. zoned land, abutting the subject property, which fronts on Sunberry Road contains a union hall used by union members for meetings and social events. A commercial enterprise, Harold's Bar, is located on that portion of the B.R. zoned land fronting on Merritt Boulevard. On the north and across Sunberry Road the subject property confronts land zoned D.R.-5.5 which is developed with single-family houses. Lying between these houses on the north side of Sunberry Road and Merritt Avenue on the west there is a used car lot. On the south and across Merritt Boulevard the subject property faces D.R.-5.5 zoned land upon which the Dundalk Presbyterian Church is located.

Merritt Boulevard is a main traffic artery with a speed limit of 45 miles per hour. The section of that road which adjoins the subject property consists of five lanes — three westbound and two eastbound — divided by a median strip. The westbound lane of Merritt Boulevard which immediately adjoins the subject property is a deceleration lane which begins at the easternmost edge of the subject property and ultimately becomes a right-hand turn onto Merritt Avenue. Harold's Bar has two driveways onto the deceleration lane. The existing residences located on the easternmost portion of the subject property also have driveways which lead directly onto the deceleration lane. Sunberry Road is a 30 foot-wide residential street with parking permitted on both sides.

---

2. The westernmost 69 feet of the lot which fronts on Sunberry Road is classified in the B.R. zone (Business-Roadside).

The application for a special exception was filed with the Zoning Commissioner (Commissioner) who, after a hearing, granted the application. The development plan approved by the Commissioner called for the construction of a Colonial-style funeral home, consisting of one-story plus a basement, to be located on the Merritt Boulevard portion of the subject property, and an off-street parking lot for 73 cars to be situated on the Sunberry Road portion of the property. Access to the property was to be limited to a single entrance on Merritt Avenue, located as near to the eastern border of the subject property as possible. Egress was to be limited to a single exit on Sunberry Road, located as close to the westernmost boundary of the subject property as possible. All exiting vehicles were to be required to turn left onto Sunberry Road.

At the hearing on appeal to the Board much testimony was presented to show that the grant of the special exception satisfied all of the requirements of the Baltimore County Zoning Regulations.[3] In opposition, the protestants,

---

**3.** *See* Baltimore County Zoning Regulations (Interim ed. 1971) § 1B01.1C.8 which establishes that funeral homes are permitted uses by way of special exception in all D.R. zones.

Baltimore County Code (1972 Cum. Supp.) § 22-23 provides, in pertinent part, that:

"Subject to the appropriate principles, standards, rules, conditions and safeguards as set forth in the zoning regulations, the zoning commissioner, upon petition, may grant variances from area and height regulations and may make special exceptions to the zoning regulations in harmony with their general purpose and intent; provided, that the issuance of all such special exceptions and variances shall be subject to appropriate principles, standards, rules, conditions and safeguards set forth in the zoning regulations, and that all decisions of the zoning commissioner with respect to such matters shall be subject to appeal to the board of appeals as provided in this article."

*See also* Baltimore County Zoning Regulations (Interim ed. 1971) § 500.5.

The appropriate standards governing the award of a special exception, enumerated in Baltimore County Zoning Regulations (Interim ed. 1971) § 502.1, are as follows:

"Before any Special Exception shall be granted, it must appear that the use for which the Special Exception is requested will not:

"a. Be detrimental to the health, safety or general welfare of the locality involved;
"b. Tend to create congestion in roads, streets or alleys therein;
"c. Create a potential hazard from fires, panic or other dangers;

neighboring landowners, presented testimony intended to show that the grant of the requested special exception would tend to create congestion on neighboring roads and streets and would, in other respects, be detrimental to the health, safety and general welfare of the locality involved. According to them, the entrance on the Merritt Boulevard deceleration lane was unsafe; the proposed use would create traffic congestion on Sunberry Road and would generally increase the amount of traffic moving throughout the residential community. Moreover, they alleged that the proposed use would create a wedge for future commercialization, and would have a depressing psychological effect that would interfere with the enjoyment of the adjoining properties, make them less saleable, and prevent them from appreciating in value as much as other homes in the area.

In its opinion denying the requested special exception, the Board said:

> "The Board finds that this is a very close case to decide, but believes the greater weight of testimony in evidence is with the protestants. The Board believes the granting of the special exception will create traffic problems on Sunberry Road and will, in fact, be detrimental otherwise to the general welfare of the locality involved, and therefore, will deny the requested petition for a special exception for a funeral home."

The applicable standards for judicial review of the grant or denial of a special exception have been frequently expressed by the Court of Appeals. *Turner v. Hammond,* 270 Md. 41, 54-55, 310 A. 2d 543, 550-51 (1973); *Cason v. Bd. of Co. Comm'rs,* 261 Md. 699, 707, 276 A. 2d 661, 665 (1971); *Rockville Fuel v. Bd. of Appeals,* 257 Md. 183, 187-88, 262 A. 2d 499, 502 (1970); *Montgomery County v. Merland's Club,*

---

"d. Tend to overcrowd the land and cause undue concentration of population;
"e. Interfere with adequate provisions for schools, parks, water, sewerage, transportation or other public requirements, conveniences or improvements;
"f. Interfere with adequate light and air."

*Inc.*, 202 Md. 279, 287, 96 A. 2d 261, 264 (1953). The conditional use or special exception is a part of the comprehensive zoning plan sharing the presumption that, as such, it is in the interest of the general welfare, and therefore, valid. The special exception is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature has determined to be permissible absent any fact or circumstance negating the presumption. The duties given the Board are to judge whether the neighboring properties in the general neighborhood would be adversely affected and whether the use in the particular case is in harmony with the general purpose and intent of the plan.

Whereas, the applicant has the burden of adducing testimony which will show that his use meets the prescribed standards and requirements, he does not have the burden of establishing affirmatively that his proposed use would be a benefit to the community. *Rockville Fuel, supra*, at 257 Md. 191, 262 A. 2d 503. If he shows to the satisfaction of the Board that the proposed use would be conducted without real detriment to the neighborhood and would not actually adversely affect the public interest, he has met his burden. The extent of any harm or disturbance to the neighboring area and uses is, of course, material. If the evidence makes the question of harm or disturbance or the question of the disruption of the harmony of the comprehensive plan of zoning fairly debatable, the matter is one for the Board to decide. But if there is no probative evidence of harm or disturbance in light of the nature of the zone involved or of factors causing disharmony to the operation of the comprehensive plan, a denial of an application for a special exception is arbitrary, capricious and illegal. The case before us falls within the latter category.

Here, in order to deny the right of the property owner to enjoy the requested special exception, the Board needed before it probative evidence that the proposed use would, in fact, create traffic congestion on Sunberry Road, and would, in fact, be detrimental otherwise to the general welfare of

the locality involved. In this case there was no such probative evidence presented. In reviewing the evidence before the Board it must be noted that the opinion or conclusion of an expert or lay witness is of no greater probative value than that warranted by the soundness of his underlying reasons and facts. *Surkovich v. Doub*, 258 Md. 263, 272, 265 A. 2d 447, 451 (1970); *Creswell v. Baltimore Aviation*, 257 Md. 712, 721, 264 A. 2d 838, 843 (1970); *Westview Park v. Hayes*, 256 Md. 575, 581-82, 261 A. 2d 164, 167 (1970); *Miller v. Abrahams*, 239 Md. 263, 273, 211 A. 2d 309, 314 (1965). Thus, unsupp rted conclusions of witnesses to the effect that a proposed use will or will not result in harm amount to nothing more than vague and generalized expressions of opinion which are lacking in probative value. *Rockville Fuel, supra,* at 257 Md. 193, 262 A. 2d 504-05.

A qualified traffic expert, presented by the applicant, testified with respect to the traffic impact which the proposed use would have upon Sunberry Road. His opinion was based upon a study of the traffic to be generated by the proposed use and the traffic conditions then existing upon Sunberry Road. He testified that in his opinion Sunberry Road could comfortably and safely accommodate the volume of traffic to be generated by the proposed use. In contrast, the only expert testimony presented to the contrary was that of Eugene J. Clifford, director of traffic engineering for Baltimore County. He stated that, although he had not made a study of traffic at the location of the proposed special exception, he had reviewed the proposal and had "checked over the roads and the property." In essence, his testimony regarding Sunberry Road consisted of a statement that it is undesirable to increase traffic on a 30-foot-wide road in a residential neighborhood in which parking is permitted on both sides of the street. In addition, several nearby residents testified that the grant of the special exception would result in traffic congestion on Sunberry Road. Thus, the testimony presented by the protestants neither contradicts nor rebuts that of the appellant's qualified traffic expert to the effect that Sunberry Road is capable of absorbing the increase in traffic which the proposed use would generate. There are no facts provided by either the expert or the laymen to support

the conclusion that increased traffic on Sunberry Road is "undesirable" or that traffic congestion will, in fact, result from the increase in traffic to be generated by the proposed use. Consequently, the testimony presented to the Board to show that the grant of the requested special exception would result in traffic congestion on Sunberry Road was totally devoid of probative value, and was, in effect, no evidence at all.

The testimony presented to show that the grant of the special exception would otherwise be detrimental to the general welfare of the locality involved is similarly lacking in probative force. The applicant presented the testimony of a qualified traffic expert who opined that the entrance on Merritt Boulevard was safe. He pointed out that both the State Roads Commission and the Department of Traffic Engineering in Baltimore County have approved the location of the proposed entrance.

The only evidence presented to the contrary was that of Mr. Clifford who testified that it is generally undesirable to have driveways leading directly onto deceleration right-turning lanes. More specifically, he stated:

> "Any driveway located at a right-turning lane is undesirable, of course, and any change in the land use at a site like this is bound to increase the traffic generated by the site.
>
> "So if the driveway is undesirable, an increased use of it becomes even more undesirable."

In support of his conclusion that driveways leading onto deceleration lanes for right-hand turns were unsafe, he stated:

> "Vehicles attempting to make right turns are usually intent on the maneuver, and people usually suddenly slow down to make a right turn at some point other than the intersection proper, represents an accident possibility.
>
> "People who are attempting to enter from a private driveway are not usually expected by the person on the main highway to turn into a side road

by way of these deceleration lanes, and the ability of a driver to exit at a point like that, and accelerate enough to get free of a free-moving vehicle, is very difficult, — plus the fact that somebody exiting from one of these private driveways, conceivably would attempt to go completely across in this case, the first half of Merritt Boulevard, to merge in a left turn into Peninsula Expressway, which I find is completely undesirable."

A careful analysis of Mr. Clifford's testimony reveals its inherent deficiencies. The reasons he offers in support of his conclusion that an access on Merritt Boulevard will increase the potential for accidents all relate to conditions which would arise if vehicles exited from the subject property onto the deceleration lane. The record, however, shows that the proposed access on Merritt Boulevard is to be restricted to use by vehicles entering onto the subject property. Moreover, the entrance is to be located at the easternmost boundary of the site near the beginning of the deceleration lane, thus minimizing the accident potential for cars entering the property. Mr. Clifford's failure to take these facts into account leaves his conclusion that an access onto Merritt Boulevard will increase the potential for accidents totally unsupported by reasons. More importantly, his opinion is unsupported by any specific facts which would lead to the conclusion that, given the traffic conditions then existing on Merritt Boulevard and the traffic which would be generated by the requested special exception, the use of a proposed entrance from Merritt Boulevard would probably result in accidents. In short, Mr. Clifford's testimony is too vague and generalized to be accorded any probative value. In essence, it amounts to no evidence at all.

Finally, with respect to the traffic impact of the requested special exception, both a witness qualified as an expert in real estate transactions and several of the neighboring property owners testified that the grant of the special exception would have an adverse effect because it would increase the traffic flowing through other residential streets

of the neighborhood. In so doing the protestants failed to take into account the fact that, according to the applicant, all traffic would be required to enter on Merritt Boulevard and to exit on Sunberry Road, and that all traffic exiting onto Sunberry Road would be required to turn left. Accordingly, all vehicular traffic onto the subject property will traverse Merritt Boulevard, a non-residential street, while all vehicular travel from the subject property will be confined to that small portion of Sunberry Road lying between the subject property and its intersection with Merritt Avenue. It is apparent that under those circumstances the conclusion that the grant of the requested special exception will result in an increased flow of traffic through residential streets other than Sunberry Road is totally unsupported and entitled to no weight.

The remaining evidence of adverse effects suffers from similar deficiencies. The applicant presented two experts qualified in the fields of planning and zoning. They testified that the proposed use constituted an appropriate buffer between the existing commercial and residential zones and would stabilize the neighborhood by preventing further expansion of the commercial uses located to the west of the subject property. In support of this opinion they pointed out that for many years the subject property had remained vacant and undeveloped with single-family residences because of its proximity to the commercially zoned land on which the union hall and Harold's Bar are located. They concluded that, given its location adjoining commercially zoned land, the subject property is not likely ever to be developed with single-family residences and, therefore, unless developed with a special exception use, the subject property will be highly susceptible of reclassification to a commercial zone.

In contrast, some neighboring property owners expressed the view that the grant of the requested special exception would create a wedge for future commercialization. This conclusion is completely vitiated by the evidence in the record which shows that there are existing expensive single-family residences on all of the property which adjoins

the subject property so that the possibility of commercial expansion to the east is remote at best. Moreover, it has been recognized in Maryland that a special exception use cannot constitute a change in the character of a neighborhood sufficient to justify a reclassification of adjoining property. *Heller v. Prince George's County,* 264 Md. 410, 417, 286 A. 2d 772, 775 (1972); *see Creswell, supra,* at 257 Md. 719, 264 A. 2d 842-43. Thus, the testimony of the neighbors in this respect, which neither contradicts nor rebuts that of the experts in planning and zoning, amounts to nothing more than a generalized fear unsupported by facts or reasons. It does not constitute probative evidence on the question of adverse effect.

Finally, the applicant presented much evidence to show that the proposed use would not interfere with the enjoyment of adjoining properties and would not depreciate the values of such homes. An architect testified that the appearance of the building, which would be residential in nature and Williamsburg in design, would be compatible with and complementary to the neighboring homes. Extensive landscaping was to be provided in order to screen the funeral home operations from view. Lights were to be on standards no higher than four feet in order to avoid reflecting on adjoining residential properties. According to the owner, the architect, and a qualified expert in the field of land planning, the 73 parking spaces proposed were more than ample, so that it would be unnecessary for cars to park on Sunberry Road. The traffic pattern within the compound was so arranged as to prevent the headlights of any car from shining directly into any residential backyard and to permit funeral processions, which on the average consist of nine cars, to be lined up within the compound without the necessity of using Sunberry Road. A witness qualified as both an expert in zoning and planning as well as a real estate broker, testified that the grant of the special exception would not adversely affect the property values of the adjoining residences. In support of his position he testified as to the original purchase price and the subsequent sale price of a number of homes in close proximity to funeral

parlors at other locations in Baltimore County. His figures indicated that all of those homes had appreciated in value.

A qualified expert in the field of real estate transactions and real estate appraisals testified on behalf of the protestants that he thought the proposed use would depreciate the value of homes in the neighborhood because it would create more traffic in the area and homeowners "do not like to live on a busy street." He also stated that "even if he [the applicant] has the best architecture in the world, it is going to be an eyesore" to the adjoining property owners. He additionally opined that notwithstanding the screening to be provided "there will be a reflection, and an attraction of bugs and Lord knows what" which will preclude outdoor living on the properties adjacent to the subject property and thereby interfere with the enjoyment of those properties. He pointed out that the off-street parking lot was inadequate for the formation of very large funerals. He stressed that a location next to a funeral home was psychologically depressing and that, consequently, people do not like to live next to a funeral home. He concluded that for all of these reasons the homes of adjacent property owners would not appreciate in value as much as the homes of others in the area and would not be as attractive or saleable as would otherwise be the case. He offered no specific evidence of sales of comparable property to substantiate that conclusion.

A number of neighboring property owners testified to the same effect. One of them, who was renting a house which adjoined the proposed parking lot, testified that if the proposed use were developed he would not exercise his option to buy. Still another witness testified that at one time she had looked at a home for sale for which the asking price was $39,000; that when she discovered it was near a funeral home she was no longer interested in purchasing it; and, that, in fact, the home had sold for only $31,500.

As we have set forth above, there was uncontradicted and unrefuted evidence that the grant of the requested special exception, as specifically proposed, would not increase

traffic flowing through residential streets. The testimony that "even the best architecture in the world would result in an eyesore" is so unreasonable as to be entitled to no weight. Unsupported statements, about reflections of light and the attraction of bugs amount to nothing more than the expression of vague and generalized fears. The slight discomfiture which might result from the fact that unusually large funerals could not be totally formed within the confines of the subject property is too minimal in significance to establish that the proposed use would depreciate the value of adjoining properties. Thus, none of these reasons is sufficient to support the protestants' conclusion that the value of their properties would be depreciated.

There can be no doubt that an undertaking business has an inherent depressing and disturbing psychological effect which may adversely affect persons residing in the immediate neighborhood in the enjoyment of their homes and which may lessen the values thereof. Indeed, it is precisely because of such inherent deleterious effects that the action of a local legislature in prohibiting such uses in a given zone or zones will be regarded as promoting the general welfare and as constitutionally sound. *Jack Lewis, Inc., v. Mayor and City Council of Baltimore*, 164 Md. 146, 155-56, 164 A. 220, 224-25 (1933). But in the instant case the legislature of Baltimore County has determined that as part of its comprehensive plan funeral homes are to be allowed in residential zones notwithstanding their inherent deleterious effects. By defining a funeral home as an appropriate use by way of special exception, the legislature of Baltimore County has, in essence, declared that such uses, if they satisfy the other specific requirements of the ordinance, do promote the health, safety and general welfare of the community. As part of the comprehensive zoning plan this legislative declaration shares in a presumption of validity and correctness which the courts will honor. *Turner, supra,* at 270 Md. 54, 310 A. 2d 550; *Rockville Fuel, supra,* at 257 Md. 187-88, 262 A. 2d 502.

The presumption that the general welfare is promoted by

allowing funeral homes in a residential use district, notwithstanding their inherent depressing effects, cannot be overcome unless there are strong and substantial existing facts or circumstances showing that the particularized proposed use has detrimental effects above and beyond the inherent ones ordinarily associated with such uses. Consequently, the bald allegation that a funeral home use is inherently psychologically depressing and adversely influences adjoining property values, as well as other evidence which confirms that generally accepted conclusion, is insufficient to overcome the presumption that such a use promotes the general welfare of a local community. Because there were neither facts nor valid reasons to support the conclusion that the grant of the requested special exception would adversely affect adjoining and surrounding properties in any way other than would result from the location of any funeral home in any residential zone, the evidence presented by the protestants was, in effect, no evidence at all.

In *Turner, supra,* at 270 Md. 60, 310 A. 2d 553, the Court of Appeals expressed itself as follows:

"We have said that substantial evidence is required to support the findings of the Board and that substantial evidence is more than a scintilla of evidence. All definitions of scintilla, at least in this context, are imprecise but if we assume it takes ten gossamers to make a scintilla then the appellee's evidence before the Board falls well short of five gossamers."

This is precisely the situation here. The record is so devoid of substantial supporting facts as to be incapable of raising a debatable issue. The protestants have shown nothing more than that they would suffer the same degree of harm as would be suffered by any homeowner if a funeral home were permitted on land adjacent or in close proximity to their residences. If the residents of Baltimore County do not want funeral homes in residential use districts, they should prevail upon the local legislature to change the ordinance.

The order of the Circuit Court reversing the Board's denial of the requested special exception is affirmed.

*Order affirmed.*
*Costs to be paid by the ap-*
*pellants.*