26 A.3d 1034

**James L. MILLS, et ux.**

**v.**

**Ronald GODLOVE, et al.**

**No. 2761, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

July 7, 2011.

Reconsideration Denied Sept. 13, 2011.

214

William C. Wantz, Hagerstown, MD, for appellant.

Travis W. Poole (Poole & Kane, P.A., on the brief), Hagerstown, MD, for appellee.

Panel: MATRICCIANI, KEHOE and HOTTEN, JJ.

HOTTEN, J.

■ The Euclidean [1] method of zoning is generally how municipalities divide " 'an area geographically into particular use districts, specifying certain uses for each district.' " *People's Counsel for Baltimore County v. Loyola College in Maryland*, 406 Md. 54, 70, 956 A.2d 166 (2008) (quoting

---

1. "Euclidean zoning is a fairly static and rigid form of zoning named after the basic zoning ordinance upheld in *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926)." *Rylyns, supra*, 372 Md. at 534, 814 A.2d 469.

*Rouse–Fairwood Dev. Ltd. P'ship v. Supervisor of Assessments for Prince George's County,* 138 Md.App. 589, 623, 773 A.2d 535 (2001)). The Euclidean method was " 'designed to achieve stability in land use planning and zoning and to be a comparatively inflexible, self-executing mechanism which, once in place, allows for little modification beyond self-contained procedures for predetermined exceptions or variances.' " *Loyola,* 406 Md. at 70, 956 A.2d 166 (quoting *The Mayor & Council of Rockville v. Rylyns Enter.'s,* 372 Md. 514, 534, 814 A.2d 469 (2002)).

In the present case, the Washington County Board of Zoning Appeals ("Zoning Board") granted James L. Mills and Korina Mills, collectively appellants, a special exception and variance that would allow them to park paving equipment on their property. Ronald Godlove and Gail McDowell, collectively appellees, appealed and the Circuit Court for Washington County reversed the Zoning Board's decision. Appellants noted an appeal and ask us to consider the following questions:

1. Did the Circuit Court err in reversing the Board's grant of variance relief, where the variances were supported by substantial evidence of practical difficulty, and the resulting convenience to the applicant was merely incidental?

2. Did the Circuit Court err in reversing the Board's grant of special exception, where the Board determined that no adverse effect from the proposed use at the proposed location had been shown?

For the following reasons, we conclude that the circuit court did not err in its determination.

## Factual and Procedural Background

Appellants own property in Washington County that is divided by Licking Creek Road. Appellants reside on the east side of the road and maintain a garage and paving equipment on the west side. After parking the paving equipment on the west side of the property without issue for seven years, a

complaint was filed. As a result, appellants sought a special exception and variance to continue parking the paving equipment on their property.

On March 14, 2007, appellants appeared before the Zoning Board to request a special exception and variance. At the hearing, several people testified and submitted letters in opposition to appellants' request. Appellees wrote a joint letter objecting to appellants' request. The letter explained that their father's estate, which is adjacent to and surrounds appellants' property, would suffer a diminution in value. Moreover, the letter stated that there would be runoff into Licking Creek "from the petroleum based products." Appellees also testified at the hearing. McDowell testified that she was concerned that the special exception would "run with the land," and that it may affect future use, which was "still up in the air." McDowell also feared that there would be a petroleum runoff that would "leach down" into a flood plain owned by the estate, and then into Licking Creek. Godlove testified that he opposed the special exception because he was concerned that parking paving equipment on appellants' property would be detrimental to the environment, and would affect property values in the area.

Judy Kline, the daughter of one of appellants' neighbors, testified that she opposed the special exception because they "have seven grandchildren and probably at one point we will put a residential building there." However, Kline did not indicate when this would occur. Kline also testified that she was concerned that when her grandchildren play near Licking Creek, they would be near paving equipment.

Terry McGee, the chief engineer for Washington County, submitted a letter, which read in pertinent part:

Although the paving condition[s] of Licking Creek Road are very poor, the business as described in the request is a low traffic generator and thus our requirements regarding paving conditions do not apply. Even though this is a low volume traffic generator, our standard requirement [is] 18 foot wide paving to support all non resident development.

The current road width is generally only 16 feet wide, although several locations are less than that. As such, we do not recommend approval of the variance unless the applicant widens the road to 18 feet minimum in accordance with County policy.

Mr. Mills testified and stated that it was not his intention to contaminate Licking Creek. He further stated that appellants would have to store the paving equipment ten to twelve miles away if they were not allowed to park it on their property, which would create "[a] lot of inconvenience...."

On April 13, 2007, the Zoning Board issued an opinion and made the following findings of facts:

1. The Appellants have owned the subject property since 1999.

2. Appellants operate a paving business and wish to park their business vehicles on the property as they have been doing for the past seven years.

3. The vehicles consist of 4 dump trucks, a backhoe, and a trailer with a paver and roller.

4. The Appellants have no plans to remove any existing vegetation.

5. Several neighbors objected to the property, but the Appellants advised that those same neighbors have never before objected to the parking of the vehicles on property, as has been done for seven years.

6. Widening one-half mile of Licking Creek Road would impose significant financial burden on Appellants, and may encourage further development.

7. Received and filed with the Board was a memorandum from Terrence McGee, P.E., Chief Engineer in the Washington County Engineering Department, stating that the department does not recommend approval of the variance request unless the road is widened to the minimum 18' width required by County policy.

8. Received and filed with the Board was a memorandum from Kathy A. Kroboth, Washington County Zoning Coordi-

nator, advising that the appeal is consistent with the Comprehensive Plan, and we find that the proposal is compatible with the neighborhood.

In its decision, the Zoning Board explained that appellants' property is "suited for the proposed use," and that it has "been put to such use for the past seven years." Moreover, appellants' property was unique from other lots in the area, which made strict compliance with the special exception requirements impossible. The Zoning Board then concluded that denying the requested variance "would be a substantial injustice upon [a]ppellants and that, with the appropriate conditions,[2] granting the variance [would] uphold the spirit of the Ordinance." The Zoning Board ultimately granted appellants' special exception request to store contractor's equipment. It then granted a variance that reduced the three acre requirement to .12 acres; the 300 foot width requirement to ninety feet; the fifty yard setback requirements to five feet on both side yards and fifteen feet in the front yard.

Appellees submitted a petition for judicial review to the Circuit Court for Washington County. On October 11, 2007, the circuit court issued an opinion, holding that the findings articulated by the Zoning Board were insufficient. The court explained that the Zoning Board's findings did "not balance the 'beneficial purposes' of the use with its 'possible adverse effect,' nor [did] they support the notion that [appellants'] use of the property [did] not 'have an adverse effect above and beyond that ordinarily associated with such uses.' " The circuit court also found that there were insufficient findings of facts to establish the uniqueness of appellants' property, or that there was a practical difficulty in strictly complying with the requirements for a storage yard exception. In the end, the circuit court reversed the Zoning Board's decision and remanded for further proceedings.

---

**2.** The Zoning Board's conditions were: (1) no maintenance on the subject property, (2) only the 4 dump trucks, a backhoe, and the trailer with a paver and roller were allowed to be parked on the subject property, and (3) only snow removal equipment could be parked on the subject property when paving season ended.

On March 18, 2009, the Zoning Board held a second public hearing to address appellants' request for a special exception and variance. At the hearing, appellants attempted to clarify that the proposed use would not have adverse effects above and beyond those inherently associated with storing contractor's equipment. Appellants also explained that the configuration of their property was unique because it was triangular in shape, had a steep drop-off in the rear, was very shallow, and that no other property in the area was divided by Licking Creek. Appellants then asserted that it would be a "big hassle" to park the equipment off-site because the nearest storage area was thirty miles away.[3] Appellees countered that appellants' property was not unique simply because of its size, and that their property was too small to store the number of vehicles appellants desired.

On April 16, 2009, the Zoning Board issued an opinion and rendered the following findings of facts:

1. The Board adopts those Findings of Facts set forth in its original Opinion dated April 13, 2007.

2. The property is unique in its shape and size from other properties in the neighborhood; it is smaller than most, if not all other, properties in the area, and is uniquely shaped due to its severance by Licking Creek Road and the shallowness of the lot.

3. This request for storage of equipment on the property is primarily one of convenience; Appellants have a snow removal contract with the State which requires them to be mobilized and ready to plow with only one hour's notice.

4. No truck repair or washing is, or will be done, on the premises, so the adverse effects inherent to the operation of a contractor's equipment storage yard are no greater at this site than they would be at any other site.

---

**3.** Appellants further asserted that keeping the paving equipment on their property would prevent "theft, vandalism, and other adverse acts." Appellants then reminded the Zoning Board that they had a snow plowing contract with the State that required them to be at a designated location within one hour of notice.

5. The nearest residential use is approximately ½ mile away.

6. The triangular shape of the property, its size, and its dissection by the road make it unique in that strict compliance with the required setbacks would make the use of the property difficult if not impracticable.

7. The topography of the property (it has a steep drop-off to the rear) also makes it unique from other properties in the area.

In its opinion, the Zoning Board explained that appellants' property was "suited to the proposed use[,]" and that the "proposed use [was] of relatively low intensity and [was] compatible with the neighborhood." The Zoning Board then highlighted the fact that there was a lack of evidence that the proposed use was incompatible with the neighborhood; disruptive of neighbors' quiet enjoyment; detrimental to property values; would create excessive odors, dust, gas, smoke, fumes, vibrations, or glare; would cause traffic that would exceed the capacity of existing infrastructure; or that the proposal was an inappropriate use of land or structure. The Zoning Board further explained that a variance was necessary because appellants' property was unique, and that strict compliance with the special exception requirements would be impossible. The Zoning Board also noted that denying the variance would "be a substantial injustice." In the end, the Zoning Board granted the special exception and variance.

Appellees filed a second petition for judicial review. On January 4, 2010, the Circuit Court for Washington County issued an opinion reversing the Zoning Board's grant of a special exception and variance. The court noted that there was insufficient analysis of the inherent adverse effects, and specifically articulated:

There is no discussion of the inherent adverse effects associated with an equipment storage yard. There is no analysis in the Board's Opinion whether the inherent adverse effects resulting from granting a special exception would be unique or different at this particular locality.

The circuit court then observed that even if appellants met their burden of production, there was ample evidence and testimony that raised a "genuine issue of material fact," thereby shifting the burden of persuasion to appellants.[4] The circuit court further noted that appellants "failed, as a matter of law, to prove practical difficulty." Appellants noted a timely appeal.

### Standard of Review

Our role in reviewing the Zoning Board's decision to grant a special exception and variance is limited " 'to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determin[ing] if the administrative decision is premised upon an erroneous conclusion of law.' " *Montgomery County v. Butler,* 417 Md. 271, 283, 9 A.3d 824 (2010) (quoting *Marzullo v. Kahl,* 366 Md. 158, 171, 783 A.2d 169 (2001) (quoting *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376 (1999)) (quotation marks and citations omitted)). In making that determination, we do not substitute our judgment for that of the administrative agency. *See Loyola, supra,* 406 Md. at 66–67, 956 A.2d 166 (citations omitted).

"In judicial review of zoning matters, including special exceptions and variances, 'the correct test to be applied is whether the issue before the administrative body is "fairly debatable," that is, whether its determination is based upon evidence from which reasonable persons could come to different conclusions.' " *White v. North,* 356 Md. 31, 44, 736 A.2d

---

4. The circuit court also noted that "absent [was] any recognition by the Board of the allocation of the burden of persuasion." Although the circuit court recognized there was a burden of persuasion, it incorrectly determined that once "issues of material fact were raised" the burden shifted. The circuit court mistook the burden of persuasion for the burden of production. If issues of material fact were raised, as the circuit court suggests, the burden of production would have shifted not the burden of persuasion. *See Angelini v. Harford County,* 144 Md.App. 369, 376, 798 A.2d 26 (2002). ("To satisfy the burden of production is not remotely to satisfy the burden of persuasion."). The burden of persuasion was on appellant throughout the entire case.

1072 (1999) (quoting *Sembly v. County Bd. of Appeals Baltimore County,* 269 Md. 177, 182, 304 A.2d 814 (1973)). In order to be "fairly debatable, the administrative agency overseeing the . . . decision must have 'substantial evidence' on the record supporting its decision." *White,* 356 Md. at 44, 736 A.2d 1072 (citations omitted). In that regard, " 'we inquire whether the zoning body's determination was supported by "such evidence as a reasonable mind might accept as adequate to support a conclusion. . . ." ' " *Loyola,* 406 Md. at 67, 956 A.2d 166 (quoting *People's Counsel for Baltimore County v. Surina,* 400 Md. 662, 681, 929 A.2d 899 (2007)) (quoting *The Mayor & Aldermen of the City of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 398, 396 A.2d 1080 (1979)).[5]

## Variance[6]

■■■ "The general rule is that the authority to grant a variance [7] should be exercised sparingly and only under excep-

---

**5.** The Court of Appeals in *Annapolis Waterfront Co., supra,* 284 Md. at 398–99, 396 A.2d 1080 (quoting 4 K. Davis, Administrative Law, § 29.05, at 137, 139 (1958)) provided a beneficial breakdown of· the substantial evidence rule:

> The heart of the fact-finding process often is the drawing of inferences from the evidence. A fact finder may draw inferences from the words or gestures or inflections or demeanor of a particular witness, may infer a particular basic fact from the testimony of one or more witnesses on one side or on both sides, and may infer an ultimate fact from undisputed basic facts or from an entire record of conflicting evidence. . . .
>
> The question for the reviewing court is . . . whether the conclusions "reasonably may be based upon the facts proven." The court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness.

**6.** The variance that was granted in the instant case was predicated on the grant of a special exception. However, the variance was useless without the special exception. In light of that, the Zoning Board, and the circuit court, analyzed the special exception request first. However, in appellants' brief, the variance issue is argued first. Although we believe the special exception should be addressed first, we shall adhere to the order established by appellant.

**7.** "A variance refers to 'administrative relief which may be granted from the strict application of a particular development limitation in the

tional circumstances." *Cromwell v. Ward,* 102 Md.App. 691, 703, 651 A.2d 424 (1995). In Washington County, a variance can be granted for "height, lot area, yard regulations, parking, space requirements, sign regulations, distance requirements . . ., buffer requirements and other distance or dimensional requirements of the Ordinances." *See* Section 25.2 of the Washington County Zoning Ordinance. Moreover, because we are reviewing a variance request in Washington County, which is a Commissioner's County subject to Md.Code. (2010 Repl. Vol.), Article 66B, a variance is permissible where: (1) the request is not contrary to the public interest; (2) there are peculiar conditions of the property that prohibit literal enforcement of a zoning ordinance; and (3) where enforcement of the zoning ordinance would cause unnecessary hardship or practical difficulty. Article 66B § 1.00(m)(1)-(2).

In *Cromwell,* 102 Md.App. at 694–95, 651 A.2d 424, Judge Cathell provided a good explanation of the process one should use in determining whether to grant a variance request:

The first step requires a finding that the property whereon structures are to be placed (or uses conducted) is—in and of itself—unique and unusual in a manner different from the nature of surrounding properties such that the uniqueness and peculiarity of the subject property causes the zoning provision to impact disproportionately upon that property. Unless there is a finding that the property is unique, unusual, or different, the process stops here and the variance is denied without any consideration of practical difficulty or unreasonable hardship. If that first step results in a supportable finding of uniqueness or unusualness, then a second step is taken in the process, i.e., a determination of whether practical difficulty and/or unreasonable hardship, resulting from the disproportionate impact of the ordinance caused by the property's uniqueness, exists. Further con-

---

zoning ordinance.' " *Critical Area Comm'n for the Chesapeake & Atlantic Coastal Bays v. Moreland, LLC,* 418 Md. 111, 114 n. 1, 12 A.3d 1223 (2011) (quoting *Rylyns, supra,* 372 Md. at 537, 814 A.2d 469, quoting Stanley D. Abrams, Guide to Maryland Zoning Decisions, § 11.1 (3d. ed. Michie 1992)).

sideration must then be given to the general purposes of the zoning ordinance.

In the present case, the Zoning Board determined that appellants' property was unique due to the size and shape of the lot, and because the property was divided by Licking Creek Road. On appeal, the parties stipulated that appellants' property was "unique as defined by variance law." Accordingly, we shall not address whether the Zoning Board correctly determined appellants' property was unique. Instead, we focus on whether the Zoning Board correctly determined that compliance with the zoning ordinance would be practically difficult.

The Washington County Zoning Ordinance states that a variance can only be granted if there is a showing of practical difficulty *or* undue hardship. *See* Section 25.56 of the Washington County Zoning Ordinance. In situations like this, where the terms undue hardship or practical difficulty "are framed in the disjunctive ("or"), Maryland courts generally have applied ... the less restrictive practical difficulties standard to area variances because use variances are viewed as more drastic departures from zoning requirements." *Montgomery County v. Rotwein*, 169 Md.App. 716, 729, 906 A.2d 959 (2006) (quoting *Belvoir Farms Homeowners Ass'n, Inc. v. North*, 355 Md. 259, 276 n. 10, 734 A.2d 227 (1999)). Accordingly, because appellants requested an area variance, we shall review whether there was evidence of practical difficulty, which is defined as: [8]

A. Practical Difficulty

 1. Strict compliance would unreasonably prevent the use of the property for a permitted purpose or render conformance unnecessarily burdensome;

---

8. The Court of Appeals in *McLean v. Soley*, 270 Md. 208, 214–15, 310 A.2d 783 (1973), articulated a standard for practical difficulty that has been repeatedly used in analyzing whether an applicant experienced practical difficulty. However, since the Washington County Zoning Ordinance provided a definition of "practical difficulty," we use that instead of *McLean's*.

2. Denying the variances would do substantial injustice to the applicant and a lesser relaxation than that applied for would not give substantial relief; and

3. Granting the variance would observe the spirit of the Ordinance and secure public safety and welfare.

Section 25.56 of the Washington County Zoning Ordinance.

When the Zoning Board granted the variance request, it explained that appellants would experience practical difficulty in adhering to the Zoning Ordinance because of:

The lot's size and shape, and severance by the road, are unique from other lots in the area, making strict compliance impossible.

\* \* \*

... denial of the requested variance would be a substantial injustice upon [a]ppellants and that, with the appropriate conditions, granting the variance will uphold the spirit of the Ordinance.

However, the Zoning Board also noted that the variance request was primarily one of convenience. Appellees, thus, suggest that the Zoning Board erred in granting the variance request. In support, appellees assert that *Carney v. City of Baltimore,* 201 Md. 130, 93 A.2d 74 (1952), illustrates that parking the paving equipment on appellants' property because of convenience is not permissible. In *Carney,* a husband and wife submitted a permit to construct a one-story rear addition to their two-story house. *See id.* at 133, 93 A.2d 74. The husband and wife wanted the additional one-story because the wife's physical conditions made it difficult for her to walk up stairs. *Id.* The Board of Municipal and Zoning Appeals of Baltimore City considered the wife's inability to walk up the stairs, but denied the request because convenience is not sufficient for making an exception to land requirements. *Id.* at 136, 93 A.2d 74. On appeal, the Court of Appeals affirmed the Board of Municipal and Zoning Appeals of Baltimore City and stated that "[t]he need sufficient to justify an exception must be substantial and urgent and not merely for the convenience of the applicant. . . ." *Id.* at 137, 93 A.2d 74.

We found further support for appellees' position in *Rotwein*, *supra*, 169 Md.App. at 716, 906 A.2d 959, where this Court noted that a variance cannot be granted because of convenience. In *Rotwein*, the applicant, an elderly woman, requested a variance to construct a garage because: (1) she did not want to be exposed to "the elements" when she exited her car and (2) the other options would be substantially more expensive than the proposed location. *Id.* at 730, 906 A.2d 959. In denying the request, the zoning authority stated that the proposed location was a matter of convenience that did not rise to the level of practical difficulty. *Id.* Moreover, it found that any hardship was "self-created." *Id.* The Circuit Court for Montgomery County reversed and remanded for further proceedings. *See id.* at 726, 906 A.2d 959. On appeal, this Court held that the applicant's reasons did not meet the standard of "peculiar or unusual practical difficulties," *id.* at 732, 906 A.2d 959, and that financial loss, especially one that was self-created, was not sufficient to satisfy practical difficulty. *Id.* at 733, 906 A.2d 959.

In the instant case, Mr. Mills testified that parking the paving equipment off-site would create security issues, increase time retrieving the equipment, and increase costs. Mr. Mills also explained that the variance was necessary because appellants had a snow plowing contract with the State that required them to be at a specific location within one hour of notice. The aforementioned reasons are valid but suggest that the request was primarily one of convenience. As such, we conclude that *Carney* and *Rotwein* are dispositive. Thus, we hold that the circuit court did not err in reversing the Zoning Board's grant of a variance because it was primarily one of convenience.

### Special Exception

 "The special exception adds flexibility to a comprehensive legislative zoning scheme by serving as a 'middle ground' between permitted uses and prohibited uses in a particular zone." [9] *Loyola*, 406 Md. at 71, 956 A.2d 166; *see*

---

9. A permitted use does not consider "potential or actual adverse effect" that its use may have on a neighboring property. *Loyola*, 406 Md. at

*also Rylyns, supra,* 372 Md. at 541, 814 A.2d 469 ("Another mechanism allowing some flexibility in the land use process, without abandoning the uniformity principle, is the 'special exception' or 'conditional use.' "). "A special exception use 'in a zoning ordinance recognizes that the legislative body of a representative government has made a policy decision for all of the inhabitants of the particular government jurisdiction, and that the exception or use is desirable and necessary in its zoning planning....' " *Butler,* 417 Md. at 293, 9 A.3d 824 (quoting *Mossburg v. Montgomery County,* 107 Md.App. 1, 7–8, 666 A.2d 1253 (1995)). This presumption of compatibility is likely derived "from a judicially-created inference assigned to the legislative body's decision to allow, in its zoning regulations, certain uses in certain zones by grant of a special exception." *Butler,* 417 Md. at 295, 9 A.3d 824.

The Washington County Zoning Ordinance, which requires the Zoning Board to "hear and decide" special exceptions to the zoning ordinance, illustrates this logic. *See* Section 25.2(b) of the Zoning Ordinance for Washington County. The Zoning Board may grant special exceptions for permissible uses in a district, environmental conservation for the instant case, that are accounted for in the zoning ordinance. *See* Section 5B.2 of the Zoning Ordinance for Washington County. The Zoning Board may also grant any use that is functionally similar. *See* Section 5B.2 of the Zoning Ordinance for Washington County. The board, however, is not permitted to grant a special exception that is inconsistent with the purpose of the district, which in this case is defined as "a zoning category for those areas where, because of natural geographic factors and existing land uses, it is considered feasible and desirable to conserve open spaces, water supply sources, woodland areas, wildlife and other natural resources." *See* Section 5B.0 of the Zoning Ordinance for Washington County.

As we previously noted, "there is a presumption that [a special exception] use is compatible generally with

---

71, 956 A.2d 166. In contrast, a special exception "is merely deemed *prima facie* compatible" use within a zoning region. *Id.*

permitted uses in the underlying zone." *Butler*, 417 Md. at 297, 9 A.3d 824. A presumption also exists that zoning regulations "promote the public safety, health, moral, welfare and prosperity." *Rockville Fuel & Feed Co., Inc. v. Bd. of Appeals of the City of Gaithersburg*, 257 Md. 183, 187, 262 A.2d 499 (1970). That presumption, however, naturally conflicts with a special exception because it has "some deleterious effects on surrounding uses or undeveloped land in the neighborhood. . . ." *Butler*, 417 Md. at 297, 9 A.3d 824. Nonetheless, "[b]ecause the allowance of a special exception use is part of a comprehensive zoning regulatory scheme that is itself accompanied by the presumption that it promotes public safety, health, and morals, it stands to reason that this broader presumption accompanying the zoning ordinance itself generates the specific presumption of compatibility associated with the inclusion in the ordinance of those uses that may be allowed through the grant of special exceptions." *Id.* at 297–98, 9 A.3d 824.

In Maryland, *Schultz v. Pritts*, 291 Md. 1, 432 A.2d 1319 (1981) is the seminal case regarding special exceptions. In *Schultz*, the Court of Appeals articulated the standard for reviewing an application for special exception, and explained:

> This Court has frequently expressed the applicable standards for judicial review of the grant or denial of a special exception use. The special exception use is a part of the comprehensive zoning plan sharing the presumption that, as such, it is in the interest of the general welfare, and therefore, valid. The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature has determined to be permissible *absent any fact or circumstance negating the presumption*. The duties given the [zoning authority] are to judge whether the *neighboring properties in the general neighborhood would be adversely affected* and whether the use in the particular case is in harmony with the general purpose and intent of the plan.

Whereas, the applicant has the burden of adducing testimony which will show that his use meets the prescribed standards and requirements, he does not have the burden of establishing affirmatively that his proposed use would be a benefit to the community. If he shows to the satisfaction of the [zoning authority] that the proposed use would be conducted without real detriment to the neighborhood and would not actually adversely affect the public interest, he has met his burden. The extent of any harm or disturbance to the neighboring area and uses is, of course, material. If the evidence makes the question of harm or disturbance or the question of the disruption of the harmony of the comprehensive plan of zoning fairly debatable, the matter is one for the [zoning authority] to decide. But if there is no probative evidence of harm or disturbance in light of the nature of the zone involved or of factors causing disharmony to the operation of the comprehensive plan, a denial of an application for a special exception use is arbitrary, capricious, and illegal. *Turner v. Hammond,* 270 Md. 41, 54–55, 310 A.2d 543, 550–51 (1973); *Rockville Fuel & Feed Co. v. Board of Appeals of Gaithersburg,* 257 Md. 183, 187–88, 262 A.2d 499, 502 (1970); *Montgomery County v. Merlands Club, Inc.,* 202 Md. 279, 287, 96 A.2d 261, 264 (1953); *Anderson v. Sawyer,* 23 Md.App. 612, 617, 329 A.2d 716, 720 (1974). These standards dictate that if a requested special exception use is properly determined to have an adverse effect upon neighboring properties in the general area, it must be denied.

291 Md. at 11–12, 432 A.2d 1319.

After reviewing the existing standard, in an oft-quoted paragraph, the *Schultz* Court held:

[T]he appropriate standard to be used in determining whether a requested special exception use would have an adverse effect and, therefore, should be denied is whether there are facts and circumstances that show that the particular use proposed at the particular location proposed would have any adverse effects above and beyond those inherently

associated with such a special exception use irrespective of its location within the zone.

*Id.* at 15, 432 A.2d 1319.

The standard in *Schultz* has been reviewed and analyzed many times. In a particularly relevant review, Judge Harrell in *Loyola, supra,* 406 Md. at 105, 956 A.2d 166, clarified that "the *Schultz* standard . . . requires that the adverse effect 'inherent' in a proposed use be determined without recourse to a comparative geographic analysis." *Id.* (any language to the contrary in other cases is "disapproved"). In so doing, Judge Harrell noted that *Schultz* requires that a zoning authority review "the effects of a proposed use irrespective of its location within the zone," but does not require an applicant to compare the adverse effects of a proposed use against "a reasonable selection representative sampling of other sites within the same zone throughout the district or jurisdiction, *taking into account* the particular characteristics of the areas surrounding those other test sites." *Id.* at 102, 956 A.2d 166. Additionally, Judge Harrell remarked that the term "inherent" was derived from Judge Davidson's opinion in *Anderson, supra,* 23 Md.App. at 612, 329 A.2d 716, which did not state there was a comparative multi-site analysis needed to determine what adverse effects were inherent in the special exception at issue. *See Loyola,* 406 Md. at 105, 956 A.2d 166.

Recently, Judge Harrell in *Butler, supra,* 417 Md. at 271, 9 A.3d 824, again, reviewed *Schultz* and its progeny to determine whether a local government can legislate different standards for reviewing special exception applications. In *Butler,* Judge Harrell examined the Montgomery County Code, which states that a special exception [10] can be granted if the zoning

---

10. The Montgomery County Code defines special exception as "[t]he grant of a specific use that would not be appropriate generally or without restriction, which must be based on a finding that certain conditions governing special exceptions as detailed in Article 59–G exist, and that the use is consistent with the applicable master plan and is compatible with the existing neighborhood." Montgomery County Code, § 59–A–2.1 (2009). Judge Harrell notes that this definition "mimics" the definition of special exception set forth in Article 66B, the

authority finds, by a preponderance of the evidence, that the proposed use:

(1) Is a permissible special exception use in the zone.

(2) Complies with the standards and requirements set forth for the use in Division 59–G2. *The fact that a proposed use complies with all specific standards and requirements to grant a special exception does not create a presumption that the use is compatible with nearby properties and, in itself, is not sufficient to require a special exception to be granted.*

(3) Will be consistent with the general plan for the physical development of the District, including any master plan adopted by the Commission. Any decision to grant or deny a special exception must be consistent with any recommendation in a master plan regarding the appropriateness of a special exception at a particular location. If the Planning Board or the Board's technical staff in its report on a special exception concludes that granting a particular special exception at a particular location would be inconsistent with the land use objectives of the applicable master plan, a decision to grant the special exception must include specific findings as to master plan consistency.

(4) Will be in harmony with the general character of the neighborhood considering population density, design, scale, and bulk of any proposed new structures, intensity and character of activity, traffic and parking conditions, and number of similar uses. The Board or Hearing Examiner must consider whether the public facilities and services will be adequate to serve the proposed development under the Growth Policy standards in effect when the special exception application was submitted.

(5) Will not be detrimental to the use, peaceful enjoyment, economic value or development of surrounding properties or the general neighborhood at the subject site, irrespective of

---

legislation that grants non-charter counties and municipalities zoning and planning powers. *Butler,* 417 Md. at 290 n. 11, 9 A.3d 824.

any adverse effects the use might have if established elsewhere in the zone.

(6) Will cause no objectionable noise, vibrations, fumes, odors, dust, illumination, glare, or physical activity at the subject site, irrespective of any adverse effects the use might have if established elsewhere in the zone.

(7) Will not, when evaluated in conjunction with existing and approved special exceptions in any neighboring one-family residential area, increase the number, intensity, or scope of special exception uses sufficiently to affect the area adversely or alter the predominantly residential nature of the area. Special exception uses that are consistent with the recommendations of a master plan do not alter the nature of an area.

(8) Will not adversely affect the health, safety, security, morals, or general welfare of residents, visitors, or workers in the area at the subject site, irrespective of any adverse effects the use might have if established elsewhere in the zone.

(9) Will be served by adequate public services and facilities, including schools, police and fire protection, water, sanitary sewer, public roads, storm drainage and other public facilities.

*Id.* at 287–90, 9 A.3d 824 (quoting Montgomery County Code, § 59–G–1.21).

Judge Harrell concluded that "in the absence of clear legislative intent to the contrary," because there is a presumption of compatibility, a local legislature could establish different requirements from *Schultz* and its progeny. *Id.* at 302, 9 A.3d 824; *Id.* (quoting *Mossburg,* 107 Md.App. at 21, 666 A.2d 1253) ("In the absence of a provision in a zoning statute clearly requiring a stricter standard than *Schultz, Schultz v. Pritts* applies."). Judge Harrell, moreover, noted that Montgomery County was permitted to make amendments to the definitions of inherent and non-inherent because "[n]owhere in *Schultz* . . . or in any other Maryland reported case . . . is there express delineation of criteria for determining what

adverse effects are 'inherent,' versus those that are not, with regard to a particular special exception use." *Butler*, 417 Md. at 303, 9 A.3d 824; *Id.* ("If, as we hold, the County was free to enact a zoning ordinance within its delegated zoning and planning powers from the General Assembly and consistent with constitutional inhibitions, *a fortiori* it should be able to enact amendments to its zoning ordinance to deal with issues on which this Court has been largely silent.").

In light of *Butler*, when a zoning authority is determining whether to grant or deny an application for special exception, it must identify the relevant zoning ordinance and analyze whether it "is silent on matters to which *Schultz* and its progeny speak. . . ." *Id.* at 306, 9 A.3d 824. The Washington County Zoning Ordinance permits the Zoning Board to determine whether a special exception should be granted. *See* Section 25.2(b) of the Zoning Ordinance for Washington County. (The Zoning Board has the powers "[t]o hear and decide special exceptions to the Ordinance upon which the Board is required to pass.").[11] However, the zoning ordinance does not define special exception or articulate a specific standard for analyzing whether a special exception should be granted.[12] Instead, the zoning ordinance provides categorical special exceptions and permits exceptions that are consistent with the purpose of the district. Because the Washington County Zoning Ordinance is silent as to the standards enunciated in

---

11. Washington County is governed by Article 66B because it is not a charter county. *See* Article 66B § 1.02. The language bestowing authority to grant a special exception in the zoning ordinance mirrors Article 66B § 4.07(h)(2), which provides that a zoning authority shall "[h]ear and decide special exceptions to the terms of an ordinance on which the board is required to pass under the ordinance."

12. Although the Washington County Zoning Ordinance does not define special exception, because Article 66B is applicable, the ordinance assumes the definition set forth in Article 66B. The term special exception is defined as "a grant of specific use that would not be appropriate generally or without restriction and shall be based upon a finding that certain governing special exceptions as detailed in the zoning ordinance exist, that the use is consistent with the plan and is compatible with the existing neighborhood." Article 66B § 1.00(k).

*Schultz* and its progeny, the principles in those cases become pertinent and controlling.[13]

In the case *sub judice*, the circuit court reversed the Zoning Board's grant of a special exception, because, among other reasons, the board failed to discuss "the inherent adverse effects associated with an equipment storage yard," and "whether the inherent adverse effects resulting from granting a special exception would be unique or different at this particular locality." In the Zoning Board's findings of facts, it noted that "[n]o truck repair or washing is, or will be done, on the premises, so the adverse effects inherent to the operation of a contractor's equipment storage yard are no greater at this site than they would be at any other site." Then, without supporting analysis, the Zoning Board concluded that the use of appellants' land was of low intensity and was compatible with the neighborhood. The Zoning Board, again, without support, stated that "[n]o evidence was presented that the proposed use was incompatible with the neighborhood; disruptive of neighbors' quiet enjoyment of their properties; detrimental to surrounding property values; generative of excessive odors, dust, gas, smoke, fumes, vibrations, or glare; generative of traffic that would exceed the capacity of existing infrastructure; or that the proposal was inappropriate use of land or structure."

The Zoning Board's conclusions, as indicated above, were insufficient because it merely presented conclusions without pointing to any evidentiary basis. *See Moreland, supra,* 418 Md. at 134, 12 A.3d 1223; *see also Rodriguez v. Prince George's County,* 79 Md.App. 537, 550, 558 A.2d 742 (1989) ("It is not permissible for the Council, or any administrative body, simply to . . . rest on broad conclusory statements."). In *Moreland,* 418 Md. at 134, 12 A.3d 1223, the Court of Appeals recently determined that an appeal is "not amenable to mean-

---

13. *Butler* held that Montgomery County could legislatively adopt standards that differed in part from *Schultz* and its progeny. 417 Md. at 271, 9 A.3d 824. In the case *sub judice,* it is not necessary for us to decide whether an Article 66B jurisdiction would have the same flexibility.

ingful judicial review" when an agency merely states conclusions not supported by an evidentiary basis. In reaching this conclusion, the Court of Appeals focused on, among other cases,[14] *Bucktail, LLC v. The County Council of Talbot County,* 352 Md. 530, 723 A.2d 440 (1999).

In *Bucktail,* a real estate developer, Bucktail, applied for a growth allocation that would reclassify a 72.76 acre parcel from RCA to LDA, so Bucktail could develop dwelling units on the Critical Area parcel. *Id.* at 539, 723 A.2d 440. The Planning Commission opined that Bucktail's application met all the mandatory requirements and recommended reclassification. *Id.* On January 28, 1997, Bill Nos. 640 and 641 were introduced to the Talbot County Council. *Id.* A public hearing was held and the council voted four to one against Bill No. 641.[15] *Id.* In denying the bill, the Talbot County Council made the following relevant findings of fact:

(5) The proposed District Boundary Amendment from RC Rural Conservation to RR Rural Residential is a Critical Areas Growth Allocation request and as such the Council must find that the request complies with the Critical Area Policies and applicable design standards set forth in Section 19.14(c)(iv) of the Zoning Code of Talbot County.

(6) The County Council finds 'upon the basis of the evidence of record' that the request for Critical Area Growth Allocation does not comply with all of the Critical Area Policies and applicable design standards as referenced in Section 19.14(c)(iv) of the Zoning Code of Talbot County.

(7) The County Council finds that the Growth Allocation request is not consistent with the purposes and intent of the Talbot County Comprehensive Plan.

---

**14.** The Court of Appeals also reviewed *Annapolis Market Place, L.L.C v. Parker,* 369 Md. 689, 802 A.2d 1029 (2002), *Alviani v. Dixon,* 365 Md. 95, 775 A.2d 1234 (2001), and *Mastandrea v. North,* 361 Md. 107, 760 A.2d 677 (2000), superceded by statute on other grounds as stated in *Chesley v. City of Annapolis,* 176 Md.App. 413, 933 A.2d 475 (2007), but these cases are not relevant to the issue at hand.

**15.** Bill No. 640 was tabled.

(8) The County Council finds that the proposed change will not be compatible with existing and proposed development and land use in the surrounding area.

(9) The County Council finds upon the basis of the evidence of record that there have been no population changes that would suggest this reclassification to be wise.

(10) The County Council finds that the availability of public facilities and the present and proposed transportation patterns do not support the reclassification.

(11) Five members of the Council inspected the site prior to voting.

(12) In light of the above findings, the Bill requesting Critical Area Growth Allocation and reclassification of the property from RC Rural Conservation to RR Rural Residential will be denied.

*Id.* at 539–40, 723 A.2d 440.

Bucktail thereafter submitted a petition for judicial review. *Id.* at 540, 723 A.2d 440. The Circuit Court for Talbot County affirmed the County Council's decision and held that there was substantial evidence to support the denial of the requested growth allocation. *Id.* Bucktail noted an appeal and the Court of Appeals granted certiorari.[16] *Id.* at 541, 723 A.2d 440. On appeal, the Court of Appeals determined that the Talbot County Council did not sufficiently inform Bucktail—in terms of the facts and circumstances of the record—which aspect of its application did not comply with the Critical Area criteria or policies. *Id.* at 558, 723 A.2d 440. In making that determination, the Court of Appeals noted:

Council findings six through ten [were] merely conclusory statements. Here, where the planning staff and the Planning Commission ha[d] recommended approval of Bucktail's project and found that it complie[d] with all applicable requirements, it [was] not sufficient for the Council simply to express conclusions, without pointing to the facts found

---

**16.** The Court of Appeals granted certiorari before this Court could address the issue.

by the Council that form the basis for its contrary conclusion.

*Id.* As such, the Court of Appeals remanded the matter for further proceedings. *Id.* at 559, 723 A.2d 440.

*Bucktail* is instructive because the Zoning Board made conclusions that were not supported by sufficient factual predicate and analysis. Interesting enough, the Zoning Board proffered a finding of fact, which was actually a conclusion, that adverse effects would not be above and beyond those inherent in storing paving equipment because no truck repair or washing would occur on the property. Even if we accept this finding as a conclusion, we do not believe it was sufficient to warrant a review because "there has to be articulated evidence in support of a conclusory finding." *Moreland,* 418 Md. at 128–29, 12 A.3d 1223. In making this conclusion, the Zoning Board did not address the adverse effects of storing contractor's equipment, nor did it address how appellants' storage of paving equipment would be different. The Zoning Board should have fleshed out any adverse effects appellants' use would have had on the neighborhood, and determined whether those effects were above and beyond those inherently associated with storing paving equipment. The Zoning Board, moreover, did not discuss the neighborhood, provide an in depth analysis of the effect storing paving equipment would have on the neighborhood, or anything else when it concluded that the proposed use was of low intensity and compatible with the neighborhood. Likewise, the Zoning Board merely stated, without support, that there was no evidence in support of the notion that the "proposed use was incompatible with the neighborhood; disruptive of neighbors' quiet enjoyment of their properties; detrimental to surrounding property values; generative of excessive odors, dust, gas, smoke, fumes, vibrations, or glare; generative of traffic that would exceed the capacity of existing infrastructure; or that the proposal was inappropriate use of land or structure." Accordingly, we must conclude that the circuit court correctly held that the Zoning Board did not sufficiently discuss the adverse effects above and beyond those inherently associated with a storage yard.

240

JUDGMENT OF THE CIRCUIT COURT FOR WASH-
INGTON COUNTY AFFIRMED. COSTS TO BE PAID
BY APPELLANT.