499 A.2d 178
**WHITING-TURNER CONTRACTING COMPANY, et al.**

v.

**Donald N. COUPARD, et al.**

**No. 12 (Adv.), Sept. Term, 1985.**

Court of Appeals of Maryland.

Oct. 23, 1985.

John H. West, III, Baltimore (John A. Wolf, Burton H. Levin and Ober, Kaler, Grimes & Shriver, Baltimore, on brief), for appellant Whiting-Turner Contracting Co.

Kristine A. Crosswhite, Baltimore (James R. Eyler and Miles & Stockbridge, Baltimore, on brief), for C.P.C. Inc.

Delverne A. Dressel, Baltimore, for Allright Baltimore, Inc.

Howard G. Goldberg, Baltimore (Deborah K. Sobieski and Smith Somerville & Case, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

RODOWSKY, Judge.

In this case we sustain, against a variety of challenges, the constitutionality of an aspect of the statute of repose applicable to claims, including claims for indemnity, resulting from the defective and unsafe condition of an improvement to real property. While the challenges implicate the current statute as a whole, this case is specifically concerned with the statute as it stood in the twelve months prior to an amendment effective July 1, 1980.

Md.Code (1974, 1980 Repl.Vol.), § 5–108 (the Act) of the Courts and Judicial Proceedings Article (Courts Article) provided:

§ 5–108. Injury to person or property occurring after completion of improvement to realty.

(a) *Injury occurring more than 20 years later.*—Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

(b) *Action against architect or professional engineer.* —A cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect or professional engineer for damages incurred

when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use.

(c) *Three-year limitation after accrual of cause of action.*—Upon accrual of a cause of action referred to in subsections (a) and (b), an action shall be filed within 3 years.

(d) *Exception.*—This section does not apply if the defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred.

(e) *When action accrues.*—A cause of action for an injury described in this section accrues when the injury or damage occurs.

We shall use some brief terms for portions of the Act. "Design Professionals" means "any architect or professional engineer." The term "Injury" means "wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property." The term "Completion" means "the date the entire improvement first became available for its intended use."

On April 11, 1980, John Michael Smith (Smith) was seriously injured when he fell through a second-story window in a parking garage in Baltimore City. Smith sued the owner of the premises, C.P.C., Inc. (CPC), the lessee of the garage, Allright Baltimore, Inc. (Allright), the builder, Whiting-Turner Contracting Company (Whiting-Turner), and the architect who had designed the building, Donald N. Coupard (Coupard). Coupard obtained summary judgment in his favor on Smith's claim against him. The garage had first been available for its intended use on March 1, 1969. Smith's Injury occurred more than ten years after Completion, and his claim against the architect was held to be barred by subsection (b) of the Act. The remaining defend-

ants then settled with Smith. Each of the settling defendants also had pending in the action a claim for contribution or indemnity against Coupard.[1] Summary judgment predicated on subsection (b) of the Act was entered in favor of Coupard on each of these claims. The builder, owner, and tenant appealed. We issued the writ of certiorari on our own motion prior to consideration of the case by the Court of Special Appeals.

The object of these appeals is a judicial invalidation of that part of subsection (b) of the Act which bars a claim against a Design Professional for contribution or indemnity based on an Injury which occurred more than ten years after Completion. A sketch of the history of the Act will assist in understanding the issues raised by the appellants in quest of their objective.

The Act had its genesis with Ch. 666 of the Acts of 1970 which enacted the substance of subsections (a) and (d). In the code revision project the language now appearing in subsection (e) was added. *See* Ch. 2 of the Acts of the First Special Session of 1973, at 210–11. Subsections (b) and (c) were added by Ch. 698 of the Acts of 1979. After the Injury to Smith, Ch. 605 of the Acts of 1980, effective July 1, 1980, amended subsection (b) so that it now covers "any architect, professional engineer, or contractor...."

■ If the challenged portion of subsection (b) of the Act is invalid, the time when appellants' claim for indemnity would be barred would be measured either by twenty years from Completion to Injury under subsection (a) of the Act,

---

**1.** Factually, appellants claimed that Coupard failed to specify installation of a guardrail for the window through which Smith fell. In a preliminary ruling the trial court held that the omission of a guardrail violated the Baltimore City Building Code. For a case illustrating the award of common law indemnification to the owner of premises against a contractor whose violation of a building code had caused a porch to collapse, see *Gardenvillage Realty v. Russo,* 34 Md.App. 25, 366 A.2d 101 (1976).

or by three years from accrual of the claim for indemnity.[2] If the limit of ten years were void, appellants' claim for indemnity would survive because Completion of the garage occurred less than twenty years before Injury and because appellants sued for indemnification from Coupard well within three years from their settlement with Smith. The time of that settlement is the time of accrual of their claim for indemnity. *Read Drug & Chemical Co. v. Colwill Construction Co.*, 250 Md. 406, 422–23, 243 A.2d 548, 558 (1968).

Appellants contend that the ten year limitation violates: (1) the guarantee of equal protection of the laws under both the United States and Maryland Constitutions; (2) the prohibition against special laws in Md. Const. art. III, § 33; (3) the provisions, derived from the Magna Carta, of art. 19 of the Maryland Declaration of Rights; and (4) the requirement in Md. Const. art. III, § 29 that a legislative bill embrace but one subject.

(1)

The disparity with which we are concerned in the equal protection argument involves claimants for indemnity where the loss was incurred due to Injury. Subsection (b) of the Act placed a limit of ten years from Completion to Injury on only those claims for indemnity asserted against Design Professionals. On the other hand, the time limit on a claim for indemnity asserted against any other indemnitor embraced by the Act would be determined by considering the provisions of subsection (a) which bar claims twenty years after Completion. The Act's different treatment of the appellants from other claimants for indemnity, because appellants' alleged indemnitor acted as a Design Profession-

---

**2.** Three years from accrual would be based on either subsection (c) of the Act, which was part of the 1979 legislation, or the general statute of limitations, Md.Code (1974, 1984 Repl.Vol.), § 5–101 of the Courts Article. Because we shall hold subsection (b) of the Act to be valid, it is unnecessary to refine the statutory basis for the three-year alternative.

al, leads to an equal protection analysis of the Act's classification of potential indemnitors.

■ There is agreement among the parties to this case and in the reported decisions on the general purpose of statutes like the Act. They are a response to the problems arising from the expansion of liability based on the defective and unsafe condition of an improvement to real property. Liability has expanded from the standpoint of potential claimants due to a decline in the availability of defenses based on the absence of privity of contract. Judge Smith, writing for this Court in *Krieger v. J.E. Greiner Co.*, 282 Md. 50, 382 A.2d 1069 (1978), reviewed many of the decisions of other courts involving this subject. In addition, the time following Completion within which a damage action might properly be brought had been expanded, prior to *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981), by determining the time of accrual of a cause of action under the general statute of limitations by using the discovery rule where claims arose out of the construction of improvements to real property. *See Steelworkers Holding Co. v. Menefee*, 255 Md. 440, 258 A.2d 177 (1969); *Mattingly v. Hopkins*, 254 Md. 88, 253 A.2d 904 (1969); *Callahan v. Clemens*, 184 Md. 520, 41 A.2d 473 (1945). One purpose of the Act is to restrict the operation of the discovery rule. A related purpose of the Act is to limit the time after Completion during which a person may seek contribution or indemnity.

Under common law principles a claim for indemnification from a loss "resulting from the defective and unsafe condition of an improvement to real property" might, depending on the facts in a specific case, lie against a Design Professional, a contractor, a supplier of building materials or equipment, an owner/occupant, a nonoccupying owner, an occupant, and perhaps others. If a legislative body concludes that it will address the problem of expanded liability "resulting from the defective and unsafe condition of an improvement to real property," it must balance the interests

of those potentially subject to liability, of those directly suffering Injury, and of the public in having improvements built safely and at a reasonable cost. If a legislative body decides to address the problem by imposing a time limit on claims, including claims for indemnity, measured from Completion, it must decide on the appropriate period or periods of time and on the class or classes of potential defendants and indemnitors to whom the time limit or limits will apply.

Whiting-Turner and CPC say that an equal protection review of the General Assembly's judgment embodied in the Act must utilize the "heightened scrutiny" test set forth in *Attorney General v. Waldron*, 289 Md. 683, 426 A.2d 929 (1981). In *Waldron* we held that

> where a statute creates a "sensitive," though not "suspect" criteri[on] of classification, affects "important," though not fundamental personal rights or works a "significant interference" with a liberty or benefit vital to the individual, the courts will apply a standard more exacting than the rational basis test but less rigorous than the strict scrutiny analysis. [*Department of Transportation v. Armacost*, 299 Md. 392, 410, 474 A.2d 191, 200 (1984).]

The type of important, though not fundamental, personal right to which heightened scrutiny applies is illustrated by *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) which overturned the preference of men over women given by an Idaho statute dealing with the appointment of administrators of decedents' estates. In the case before us we shall assume that the time following Completion within which a claimant for indemnity based on loss arising out of Injury must sue is a "personal" right; but it is clearly not as important as the right not to be discriminated against based on sex alone. The right asserted by appellants is not as important as the rights arising under statutes or constitutional provisions dealing with free public education. As to the latter, both the Supreme Court of the United States and this Court have applied the rational basis test. *See San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) and *Hornbeck v.*

*Somerset County Board of Education,* 295 Md. 597, 458 A.2d 758 (1983). The instant case involves a right more like a hospital's right to select members of its staff, a right which has been regulated by the podiatrists' statute. That statute, Md.Code (1982), § 19–351(b) of the Health-General Article, "concededly," was to be reviewed under the rational basis test. *See State v. Good Samaritan Hospital of Maryland,* 299 Md. 310, 327, 473 A.2d 892, 901 (1984).

Many states have enacted statutes of repose applicable to claims arising out of building construction. These statutes have been challenged on equal protection grounds. While there is some difference of opinion between courts on the merits, the overwhelming majority of all of those decisions utilize a rational basis analysis. For cases where the court finds no equal protection violation, see *Hartford Fire Insurance Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362 (6th Cir.1984) (Ohio statute); *Cournoyer v. Massachusetts Bay Transportation Authority,* 744 F.2d 208 (1st Cir.1984) (Massachusetts statute); *Adair v. Koppers Co.,* 541 F.Supp. 1120 (N.D.Ohio 1982), *affirmed,* 741 F.2d 111 (6th Cir.1984) (Ohio statute); *President and Directors of Georgetown College v. Madden,* 505 F.Supp. 557 (D.Md.1980), *modified on other grounds,* 660 F.2d 91 (4th Cir.1981) (District of Columbia statute); *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970), *appeal dismissed for want of substantial federal question,* 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971); *Barnhouse v. City of Pinole,* 133 Cal.App.3d 171, 183 Cal.Rptr. 881 (1982); *Wagner v. State,* 86 Cal.App.3d 922, 150 Cal.Rptr. 489 (1978); *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822 (Colo.1982); *Cheswold Volunteer Fire Co. v. Lambertson Construction Co.,* 489 A.2d 413 (Del.1984), *affirming* 462 A.2d 416 (Del.Sup.Ct.1983); *Mullis v. Southern Co. Services, Inc.,* 250 Ga. 90, 296 S.E.2d 579 (1982); *Twin Falls Clinic & Hospital Building Corp. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982); *Matayka v. Melia,* 119 Ill.App.3d 221, 74 Ill.Dec. 851, 456 N.E.2d 353 (1983); *Beecher v. White,* 447 N.E.2d 622 (Ind.App.1983); *Burmas-*

*ter v. Gravity Drainage District No. 2*, 366 So.2d 1381 (La.1978); *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514 (1982); *O'Brien v. Hazelet & Erdal*, 410 Mich. 1, 299 N.W.2d 336 (1980); *Anderson v. Fred Wagner and Roy Anderson, Jr., Inc.*, 402 So.2d 320 (Miss.1981); *Reeves v. Ille Electric Co.*, 170 Mont. 104, 551 P.2d 647 (1976); *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (1972); *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214, *cert. denied*, 91 N.M. 3, 569 P.2d 413 (1977); *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983); *Elizabeth Gamble Deaconess Home Association v. Turner Construction Co.*, 14 Ohio App.3d 281, 470 N.E.2d 950 (1984); *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978); *Harmon v. Angus R. Jessup Associates*, 619 S.W.2d 522 (Tenn.1981); *Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870 (Tex.Civ.App.1981), *appeal dismissed*, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982). For cases where the court concludes equal protection was offended, see *McClanahan v. American Gilsonite Co.*, 494 F.Supp. 1334 (D.Colo.1980); *Shibuya v. Architects Hawaii Ltd.*, 65 Hawaii 26, 647 P.2d 276 (1982); *Fujioka v. Kam*, 55 Hawaii 7, 514 P.2d 568 (1973); *State Farm Fire and Casualty Co. v. All Electric, Inc.*, 99 Nev. 222, 660 P.2d 995 (1983); *Loyal Order of Moose, Lodge 1785 v. Cavaness*, 563 P.2d 143 (Okla.1977); *Broome v. Truluck*, 270 S.C. 227, 241 S.E.2d 739 (1978); *Kallas Millwork Corp. v. Square D Co.*, 66 Wis.2d 382, 225 N.W.2d 454 (1975); *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo.1980).

 We conclude that the challenged portion of the Act, which enjoys a strong presumption of constitutionality, can be invalidated only if the classification is without any reasonable basis and is purely arbitrary. Further, a classification having some reasonable basis need not be made with mathematical nicety and may result in some inequality. If any state of facts reasonably can be conceived that would sustain the classification, the existence of that state of facts at the time the law was enacted must be assumed. Most recently we repeated these rules in *State v. Good Samari-*

*tan Hospital of Maryland, supra,* 299 Md. at 328, 473 A.2d at 901.

Whiting-Turner emphasizes similarities in the liabilities of Design Professionals and contractors. The contractor appellant points out that both Design Professionals and contractors are exposed to claims based on Injury suffered after improvements to realty have been turned over to the owner. Both Design Professionals and contractors are subject to claims which require determining whether an alleged unsafe condition, which causes Injury after Completion, resulted from design error, from construction defect, or from the lack of adequate maintenance. Appellants say that, even if heightened scrutiny review is not required, there is no rational basis for excluding claims for indemnity asserted against contractors from the shorter ten years from Completion time bar.

Appellants also correctly note that the overwhelming number of statutes of repose which are applicable to the construction of improvements to realty and which have been enacted in other states apply the same time limit to both the contractor and to the Design Professional. It does not follow, however, that these similarities of treatment were required in order to avoid infringing equal protection.

Of all of the statutes of repose in the various states which have been tested on equal protection grounds, only Michigan's statute established for Design Professionals alone an absolute cut off of claims, measured from Completion of the project, to the exclusion of all other potential defendants and indemnitors in a building construction liability scenario. In *Muzar v. Metro Town Houses, Inc.,* 82 Mich.App. 368, 266 N.W.2d 850 (1978), the court found a builder, who had sought indemnity from an architect, to have been denied equal protection by the Michigan statute. The Supreme Court of Michigan reversed in *O'Brien v. Hazelet & Erdal, supra,* 410 Mich. 1, 299 N.W.2d 336. Viewing the Michigan statute of repose as "socio-economic" legislation, *id.* at 17, 299 N.W.2d at 341, and applying a

rational basis standard of review, the Supreme Court of Michigan advanced the following rationale in support of the legislative classification of Design Professionals:

The Legislature could rationally determine that state-licensed architects and engineers possess characteristics which reasonably distinguish them with respect to the object of the legislation. The design of improvements to real estate is primarily the province of architects and engineers, while the construction of improvements and the realization of designs is primarily the function of contractors. Architects and engineers are required by law to be licensed, while non-residential contractors are not. The Legislature might have concluded that the different education, training, experience, licensing and professional stature of architects and engineers made it more likely that a limitation on their tort liability would not reduce the care with which they performed their tasks than would be the case with contractors.

The Legislature may also have thought it necessary to reduce the potential liability of architects and engineers in order to encourage experimentation with new designs and materials. Innovations are usually accompanied by some unavoidable risk. Design creativity might be stifled if architects and engineers labored under the fear that every untried configuration might have unsuspected flaws that could lead to liability decades later. [*Id.* at 17–18, 299 N.W.2d at 342 (footnote omitted).]

We agree with the analysis of the Michigan court.

■ There is, in Maryland, an additional distinction between Design Professionals and contractors which also furnishes a rational basis for the classification established by subsection (b) of the Act. Individuals engaged in the construction of improvements to realty can limit their liability by conducting that business in corporate form. The individual who renders Design Professional services cannot limit his personal liability by acting through a corporation. Md. Code (1957, 1983 Repl.Vol.), Art. 56, § 470(c)(5), which is

part of the subtitle dealing with the professional licensing of architects, provides:

No corporation or partnership is relieved of responsibility for conduct or acts of its agents, employees or officers by reason of its compliance with the provisions of this section, nor is any individual who is practicing architecture as defined in § 464 of this subtitle relieved of responsibility for architectural services performed by reason of his employment or relationship with such corporation or partnership.

Substantially the same provision, applicable to professional engineers performing engineering services by reason of employment or relationship with a corporation or partnership, is found in Md.Code (1957, 1980 Repl.Vol.), Art. 75½, § 19A. In view of the fact that, among persons exposed to liability in the building construction context, the Design Professional uniquely is prohibited from limiting personal liability for individual negligence, even if the Design Professional is incorporated, the General Assembly reasonably could have concluded that the repose objective of the Act would be achieved by raising the bar against a claim of indemnity, in relation to Completion, at an earlier time on behalf of Design Professionals than for other potential indemnitors.

Appellants also say that Design Professionals improperly receive more favorable treatment than owners and occupiers. The rational basis for cutting off claims for indemnity asserted against Design Professionals at an earlier time than claims for indemnity asserted against owners or tenants lies in the fact that control over the improvements by the architect, like that by the builder, generally ends at Completion. Following Completion the owner will either be in possession or will have selected the possessor. In the latter event, frequently there is an express agreement concerning the obligation to maintain the improvements. Decisions employing this rationale to reject equal protection challenges based on the exclusion of owners and tenants from the statutory class include: *Hartford Fire*

*Insurance Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy; Cournoyer v. Massachusetts Bay Transportation Authority; Adair v. Koppers Co.; President and Directors of Georgetown College v. Madden; Carter v. Hartenstein; Yarbro v. Hilton Hotels Corp.; Mullis v. Southern Co. Services, Inc.; Matayka v. Melia; Burmaster v. Gravity Drainage District No. 2; Klein v. Catalano; Anderson v. Fred Wagner and Roy Anderson, Jr., Inc.; Rosenberg v. Town of North Bergen; Lamb v. Wedgewood South Corp.; Harmon v. Angus R. Jessup Associates,* all *supra.*

■ Appellants' claims against Coupard similarly encounter an earlier time bar under the Act than would claims for indemnity from a supplier of materials or equipment. That differentiation does not offend equal protection. The General Assembly could reasonably conclude that the supplier of material and equipment more typically than not deals with a standardized product, subject to relatively routine quality control under other than field conditions, while the Design Professional deals with a more unique creation which is inspected in the field. The legislature could view the liability exposure of the supplier to be less than that of the architect, because the former is in a better position than the latter to detect defects. This rationale has been relied on to sustain similar classifications in *Hartford Fire Insurance Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy; President and Directors of Georgetown College v. Madden; Barnhouse v. City of Pinole; Yarbro v. Hilton Hotels Corp.; Cheswold Volunteer Fire Co. v. Lambertson Construction Co.; Mullis v. Southern Co. Services, Inc.; Burmaster v. Gravity Drainage District No. 2; Klein v. Catalano; Howell v. Burk; Freezer Storage, Inc. v. Armstrong Cork Co.; Harmon v. Angus R. Jessup Associates,* all *supra.*

We recognize that there are courts which have struck down statutes erecting a time bar on behalf of Design Professionals and contractors but not on behalf of owners,

occupiers, and suppliers of material and equipment. *See McClanahan v. American Gilsonite Co., supra; Fujioka v. Kam, supra; Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 260 N.W.2d 548 (Minn.1977); *State Farm Fire and Casualty Co. v. All Electric, Inc., supra; Loyal Order of Moose, Lodge 1785 v. Cavaness, supra; Broome v. Truluck, supra; Kallas Millwork Corp. v. Square D Co., supra; Phillips v. ABC Builders, Inc., supra.* Almost all of these cases, in turn, rely upon the opinion in *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967). *Skinner* is not an equal protection holding. The court there applied a section of the Illinois Constitution prohibiting special laws " '[g]ranting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever.' " *Id.* at 459, 231 N.E.2d at 590. The *Skinner* court in substance viewed as arbitrary the conferral of immunity on architects and builders four years after Completion without conferring similar immunity on other potential defendants involved in the construction of improvements to realty. These cases do not, in our view, give to the legislative judgment the degree of deference required under the rational basis test.

Whiting-Turner additionally argues that there can be no rational basis for classifying it separately from Coupard because the construction of the garage where Smith suffered Injury did not involve the traditional owner-architect-contractor relationship. In its contract with CPC, Whiting-Turner undertook both to design and build so that Coupard's agreement to render architectural services was with Whiting-Turner and not with CPC. This factor does not alter our equal protection analysis. The language of Justice Powell for the Court in *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 813, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220, 233 (1976) is appropriate here.

It is well established, however, that a statutory classification impinging upon no fundamental interest, and especially one dealing only with economic matters, need not be drawn so as to fit with precision the legitimate purposes

animating it. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489[, 75 S.Ct. 461, 465, 99 L.Ed. 563] (1955). That Maryland might have furthered its underlying purpose more artfully, more directly, or more completely, does not warrant a conclusion that the method it chose is unconstitutional.

## (2)

Appellants also contend that the treatment of claims for indemnity against Design Professionals in subsection (b) of the Act violates that part of art. III, § 33 of the Maryland Constitution which provides that the General Assembly "shall pass no special Law, for any case, for which provision has been made, by an existing General Law. . . ." In *Cities Service Co. v. Governor,* 290 Md. 553, 431 A.2d 663 (1981), we reviewed our decisions applying this provision and recognized, in effect, that there is no mechanical test for determining when the provision has been violated.

*Cities Service* involved an exemption to a prohibition against a producer or refiner of petroleum products operating any retail service station in Maryland with company personnel or through a subsidiary company A producer or refiner operating any retail service station was required to divest itself of the station. There was, however, an exemption for any retail service station operated as of January 1, 1979, by a subsidiary whose gross revenues from petroleum products sold in Maryland were less than two percent of the subsidiary's gross revenues from all retail operations in Maryland. At the time of its enactment, this exemption could in fact apply to but one subsidiary in Maryland, and that fact was known to the General Assembly. Further, because the exemption applied only to a subsidiary operating any retail service station as of January 1, 1979, the class theoretically created by the exemption would not admit any subsidiary subsequently created or acquired by any petroleum producer or refiner. The exemption was a special law within the prohibition of art. III, § 33. We distinguished the exemption dealt with in *Cities Service* from the legisla-

tion involved in *Reyes v. Prince George's County*, 281 Md. 279, 380 A.2d 12 (1977) which had authorized revenue bonds to finance construction of "any sports stadium or sports arena in Prince George's County." Although there was but one such arena which could immediately benefit from the legislation, the class created would admit later entrants.

▇▇▇ Under the statute now before us, any architect or engineer sued for indemnity where the loss arose out of Injury suffered more than ten years after Completion could invoke the time bar. Appellants have not attempted to prove and do not suggest that any particular, identified Design Professionals were the intended beneficiaries of the enactment. It is not a law for a special, or particular, or individual case. Md. Const. art. III, § 33 has not been violated.

### (3)

▇▇▇ CPC and Allright submit that subsection (b) of the Act violates art. 19 of the Maryland Declaration of Rights which provides

[t]hat every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land.

The argument relies on a few decisions applying somewhat comparable provisions of other state constitutions. *See*, principally, *Overland Construction Co. v. Sirmons*, 369 So.2d 572 (Fla.1979); *Saylor v. Hall*, 497 S.W.2d 218 (Ky. 1973); and *Daugaard v. Baltic Cooperative Building Supply*, 349 N.W.2d 419 (S.D.1984). The argument is that art. 19 is violated because the July 1, 1979, enactment of subsection (b) cut off any claim for indemnity before the accident occurred, before the alleged indemnitees settled with Smith,

and before a cause of action for indemnity could even have accrued.[3]

In *Attorney General v. Johnson,* 282 Md. 274, 298, 385 A.2d 57, 71 (1978), we said that "[t]he 'law of the land' in [a]rticle 19 is the same due process of law required by the fourteenth amendment...." The issue there was whether the condition precedent of nonbinding arbitration to the filing of a malpractice action against a health care provider offended art. 19. As relevant to that issue we referred to the rule of *Munn v. Illinois,* 94 U.S. (4 Otto) 113, 134, 24 L.Ed. 77, 87 (1877) that there is no vested interest in any rule of the common law. After illustrating that principle with cases sustaining the elimination of a previously recognized tort action by the enactment of "no fault" and automobile guest statutes, we concluded that the test for determining whether access to the courts had been denied in violation of art. 19 looked to the reasonableness of the restriction.

■■■ Subsection (b) of the Act does not violate art. 19. We have shown in our equal protection analysis the reasonableness of the purpose of the statute and the reasonableness of the relationship of the restriction to that purpose. No appellant here claims that the ten year period from Completion to Injury is unreasonably short.

### (4)

CPC submits that the Act violates that part of art. III, § 29 of the Maryland Constitution which requires that "every Law enacted by the General Assembly shall embrace but one subject...." Chapter 698 of the Acts of 1979 had added both subsections (b) and (c) to the Act. CPC argues that subsection (b) is a grant of immunity while subsection

---

**3.** Chapter 698 of the Acts of 1979 which enacted subsections (b) and (c) provided: "That this Act shall take effect July 1, 1979." The operative words of subsection (b) are that "[a] cause of action for damages does not accrue and a person may not seek contribution or indemnity...." Consequently we cannot accept an alternative argument advanced by CPC that subsection (b) applies only to claims based on Injury where Completion occurred on or after July 1, 1979.

(c) is a conventional statute of limitations so that the enactment embraced more than one subject. *Bagby Elevator & Electric Co. v. McBride,* 292 Ala. 191, 291 So.2d 306 (1974) had adopted that analysis of a similar statute in applying the Alabama Constitution.

■ The purpose of the Maryland constitutional provision is "to prevent the combination in one act of several and distinct incongruous subjects...." *Allied American Mutual Fire Insurance Co. v. Commissioner of Motor Vehicles,* 219 Md. 607, 614, 150 A.2d 421, 426 (1959). The provision was a response, in part, to certain practices, one of which is described in *Davis v. State,* 7 Md. 151, 160 (1854):

A practice had crept into our system of legislation, of engrafting, upon subjects of great public benefit and importance, for local or selfish purposes, foreign and often pernicious matters, and rather than endanger the main subject, or for the purpose of securing new strength for it, members were often induced to sanction and actually vote for such provisions, which if they were offered as independent subjects, would never have received their support.

The "general disposition of [this] Court has been to give the section a liberal construction, so as not to interfere with or impede legislative action." *Painter v. Mattfeldt,* 119 Md. 466, 473, 87 A. 413, 416 (1913).

■ The bill is germane to the single subject of time bars against claims arising out of Injury.[4]

JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.

COSTS TO BE PAID BY THE APPELLANTS.

---

4. Allright has advanced a fifth contention which is of no avail to the appellants. The lessee submits that the purpose of the discovery rule adopted in *Poffenberger v. Risser, supra,* "is completely thwarted by" subsection (b). The argument does not rise to a constitutional level and cannot lead to the invalidation of subsection (b).