Circuit Court for Anne Arundel County
Case No. C-02-CV-15-001605

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2610

September Term, 2015

_____

MOREEN ELIZABETH GILROY, ET AL.

v.

SVF RIVA ANNAPOLIS LLC, ET AL.

_____

Kehoe,
Krauser,*
Zarnoch, Robert A.,
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Kehoe, J.

_____

Filed:  September 1, 2017

*Krauser, Peter B., J., now retired, participated in the hearing of this case while an active member of this Court and as its Chief Judge. After being recalled pursuant to the Constitution, Article IV, Section 3A, he participated in the decision and the preparation of this opinion.

Sean McLaughlin died on January 25, 2012, as a result of injuries received as he was trying to repair an HVAC unit on the roof of an Annapolis restaurant. Appellants, Moreen Elizabeth Gilroy and Mr. McLaughlin's other survivors, filed a wrongful death action asserting claims of negligence and premises liability against SVF Riva Annapolis, LLC, the owner of the shopping center in which the restaurant was located; Rappaport Management Corporation, the center's property management company; and CEC Entertainment, Inc., the tenant and the operator of the restaurant.

SVF Riva and Rappaport filed motions for summary judgment. CEC filed a motion for summary judgment or to dismiss. They raised several theories as to why judgment should be granted on their behalf, but the Circuit Court for Anne Arundel County entered judgment for appellees on the ground that one of Maryland's statutes of repose, specifically, Md. Code Ann., § 5-108(a) of the Courts and Judicial Proceedings Article ("CJP"), barred appellants' claims.

Appellants assert that the circuit court misinterpreted the statute. We believe that they are correct and will reverse the judgment and remand this case for further proceedings, which should include consideration of the other grounds raised by the appellees in their motions.

**Background**

At this juncture, the parties do not contest the facts. On the night of January 13, 2012, Mr. McLaughlin made a service call to repair the HVAC unit on the roof of the Chuck E Cheese restaurant at the Festival at Riva Shopping Center in Annapolis. He placed a

ladder against an exterior wall and climbed up to access the malfunctioning heating unit. However, the wall at the location selected by Mr. McLaughlin was open to the ground below. When Mr. McLaughlin attempted to step from the ladder onto what he must have thought was the roof, he fell more than 20 feet to a concrete pad. He was badly injured and passed away 12 days later.

Appellants initially filed suit against the appellees in the United States District Court for the District of Maryland on January 27, 2014. On April 24, 2015, the District Court dismissed the action without prejudice for lack of subject matter jurisdiction.

Appellants then filed the present action in the Circuit Court for Anne Arundel County on May 12, 2015. SVF Riva answered the complaint and filed cross claims seeking indemnification and contribution against the other two parties. Rappaport did the same. Both SVF Riva and Rappaport then filed separate motions for summary judgment on the basis that CJP § 5-108 barred the suit. CEC filed a motion to dismiss, which also included the statute of repose argument. Additionally, CEC asserted that the wrongful death action was untimely under Maryland's wrongful death statute and that McLaughlin was contributorily negligent.

At the hearing on the motions for summary judgment, the court and the parties focused on the scope of the exceptions to the statute of repose that are set out in CJP § 5-108(d). Appellants argued that § 5-108(d)(2)(i), which provides an exception to the operation of the statute for defendants who were "in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred," applied to appellees. Appellees disagreed, arguing that the owner, tenant, or party in possession exception had

2

to be read in context with the rest of the exceptions listed in subsection (d), which pertain to asbestos-related claims. They asserted that this meant that the exception for actions against owners, tenants, or those in possession of the property was limited to asbestos-related claims and did not apply to the present action.

The trial court agreed with appellees' interpretation of the statute. The court noted that it perceived no clear answers in the case law but it found guidance from language in *Hagerstown Elderly Assocs. Ltd. Partnership v. Hagerstown Elderly Bldg. Assocs. Ltd. Partnership*, 368 Md. 351, 359 n. 3 (2002), which indicates that the subsection (d) exceptions apply only to asbestos-related claims. (We will discuss *Hagerstown* later in this opinion.) The trial court concluded that:

> subsection (d), while it has the language the plaintiff has pointed out, all relates to asbestos. And in this section it appears that the legislature was clearly trying to carve out . . . the exception for the asbestos cases. And to read this otherwise would render the statute of repose, basically, meaningless, and there would be no statute of repose.

The circuit court did not address the other grounds presented by appellees. This timely appeal followed.

**The Standard of Review**

Appellate review of an order granting summary judgment is a two-step process. The first is to decide whether there were disputes of material fact before the circuit court. *Koste v. Town of Oxford*, 431 Md. 14, 24–25 (2013). If, as is true in this case at this juncture, there were no such disputes, then we decide whether the circuit court's legal reasoning was correct. We perform this review *de novo. Id*. at 25. Whether the circuit

court's interpretation of a statute is correct is a question of law that we also review *de novo*. *See Beall v. Holloway-Johnson*, 446 Md. 48, 76 (2016).

The Court of Appeals recently summarized the applicable principles of statutory construction:

> This Court provides judicial deference to the policy decisions enacted into law by the General Assembly. We assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly.
>
> We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language. In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments.

*Phillips v. State,* 451 Md. 180, 196-97 (2017) (quoting *Douglas v. State*, 423 Md. 156, 178 (2011)).

As we will explain, we do not agree with the circuit court's interpretation of the statute. Admittedly, CJP § 5-108(d) has a number of moving parts and its proper construction is made more difficult by the decidedly unhelpful captions added by the Code's two commercial publishers. However, the exception to the statute for actions brought against parties who were in possession and control of the premises at the time the injury or accident occurred has been part of the statute since it was first enacted in 1970. In the ensuing 47 years, the statute has been amended on several occasions. For our purposes, the critical amendment was enacted in 1991. There is nothing in the legislative

4

history of the 1991 amendment that suggests that the General Assembly intended to eliminate the existing exception—rather, the legislative intent was to add three additional, narrowly-crafted, exceptions to the statute to address certain asbestos related claims.

The captions for subsection (d) that appear in the versions of the Code published by LexisNexis and West Publishing do not affect the analysis because captions and catchlines are not part of the law itself and should not be considered when construing the statute. We recognize that our conclusion is inconsistent with dicta in the *Hagerstown Elderly Associates* opinion. However, the Court of Appeals more thoroughly addressed the scope of subsection (d) in *Rose v. Fox Pool Corp.,* 335 Md. 351, 360 (1994), and our result is consistent with the analysis in that decision.

**Analysis**

**1. Defining the Problem: Is "Or" Used Conjunctively or Disjunctively in the Statute?**

Statutes of repose are designed to establish "an absolute bar to an action or to provide a grant of immunity to a class of potential defendants after a given time period." *Anderson v. United States,* 427 Md. 99, 118 (2011). Section 5-108 addresses certain claims arising out of improvements to real property. It states (emphasis added):

> (a) Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.
>
> (b) Except as provided by this section, a cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect,

5

professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use.

(c) Upon accrual of a cause of action referred to in subsections (a) and (b) of this section, an action shall be filed within 3 years.

(d)(1) In this subsection, "supplier" means any individual or entity whose principal business is the supply, distribution, installation, sale, or resale of any product that causes asbestos-related disease.

**(2) This section does not apply if:**

**(i) The defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred;**

(ii) In a cause of action against a manufacturer or supplier for damages for personal injury or death caused by asbestos or a product that contains asbestos, the injury or death results from exposure to asbestos dust or fibers which are shed or emitted prior to or in the course of the affixation, application, or installation of the asbestos or the product that contains asbestos to an improvement to real property;

(iii) In other causes of action for damages for personal injury or death caused by asbestos or a product that contains asbestos, the defendant is a manufacturer of a product that contains asbestos; **or**

(iv) In a cause of action for damages for injury to real property that results from a defective and unsafe condition of an improvement to real property:

1. The defendant is a manufacturer of a product that contains asbestos;

2. The damages to an improvement to real property are caused by asbestos or a product that contains asbestos;

3. The improvement first became available for its intended use after July 1, 1953;

4. The improvement:

A. Is owned by a governmental entity and used for a public purpose; or

B. Is a public or private institution of elementary, secondary, or higher education; and

5. The complaint is filed by July 1, 1993.

(e) A cause of action for an injury described in this section accrues when the injury or damage occurs.

On its face, subsection (d) appears to set out four exceptions to the statute. Three of them, CJP § 5-108(d)(2)(ii)-(iv), apply to claims against manufacturers or suppliers of products containing asbestos. However, CJP § 5-108(d)(2)(i) provides an exclusion for a defendant "in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred" and makes no mention of asbestos. The four exceptions are linked by the conjunction "or." "Or" generally has a disjunctive meaning, that is, the word is used to indicate "an alternative between unlike things, states or actions[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1585 (1986); *see also* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1236 (4th ed. 2006) (defining "or" as a conjunctive "used to indicate an alternative . . . ."). Maryland courts generally interpret "or" in the disjunctive sense when they construe statutes.[1]

---

[1] *See, e.g., Burnett v. Spencer*, 230 Md. App. 24, 33 (2016) ("Rule 2-631 states that '[j]udgments may be enforced only as authorized by these rules *or* by statute.' (Emphasis added.) Because the rule employs the disjunctive term 'or,' it is obvious, as a matter of logic and grammar, that a person may enforce a judgment by a method that is authorized by the rules alone: the method need not also be expressly authorized by statute."); *In re Adoption of K'Amora K.,* 218 Md. App. 287, 304 (2014) ("[T]he disjunctive wording in [Family Law Article] § 5–323(b) ... authorizes the court to terminate a parent's rights even absent a specific finding that a parent is unfit to care for her child" so long as exceptional circumstances are present.); *Mills v. Godlove*, 200 Md. App. 213, 226 (2011) ("[W]here the terms undue hardship or practical difficulty 'are framed in the disjunctive ("or"), Maryland courts generally have applied ... the less restrictive practical difficulties standard to area variances because use variances are viewed as more drastic departures from zoning requirements.'" (Citations omitted)); *Severstal Sparrows Point, LLC v. Pub. Serv. Comm'n of Maryland*, 194 Md. App. 601, 624–25 (2010) (Public Utilities Article "Section 7-505(b)(8) is phrased in the disjunctive. Thus, it must be read to mean that

However, this rule is not absolute. Maryland courts sometimes give a conjunctive, rather than a disjunctive meaning to "or," when "the context reasonably supports the inference that such a construction is necessary to effectuate the intent of the Legislature." *David N. v. St. Mary's County. Dep't of Soc. Services*, 198 Md. App. 173, 197 (2011) (quoting *Reier v. State Department of Assessments and Taxation,* 397 Md. 2, 32 (2007)).[2] The trial court's analysis was necessarily based on the implicit assumption that the "or" in subsection (d) is to be interpreted in the conjunctive sense.

Whether a court should interpret "or" as a conjunctive in a specific case depends upon legislative intent, which can be identified through legislative history as well as a consideration of the substantive provisions of the statute. In the present case, either path leads to the same destination. Interpreting the "or" in § 5-108(d) as conjunctive is inconsistent with the statute's legislative history and also yields illogical results.

---

*either* Title 4 *or,* 'as applicable,' Section 7-510(c)(4) governs the 'terms, conditions, and rates' for SOS.").

[2] *See also Comptroller v. Fairchild Indus., Inc.,* 303 Md. 280, 286 (1985) (Courts construe the word "and" to mean "or" as required by context in order to comply with the clear legislative intent.); *Little Store, Inc. v. State,* 295 Md. 158, 163 (1983) ("It is well settled that the terms 'and' and 'or' may be used interchangeably when it is reasonable and logical to do so.").

**The Legislative History**

**The Initial Version of the Statute: Article 57, § 20**

What is now CJP § 5-108 was first enacted by the General Assembly in 1970 as Article 57, § 20. Ch. 666, Laws of Md. 1970. The statute as originally enacted stated (emphasis added):

> No action to recover damages for injury to property real or personal, or for bodily injury or wrongful death, arising out of an improvement to real property, nor any action for contribution or indemnity for damages incurred as a result of said injury or death, shall be brought more than twenty years after the said improvement was substantially completed. **This limitation shall not apply to any action brought against the person who, at the time the injury was sustained, was in actual possession and control as owner, tenant, or otherwise of the said improvement.** For purposes of this section, "substantially completed" shall mean when the entire improvement is first available for its intended use.

In *Whiting-Turner Contracting Co. v. Coupard,* 304 Md. 340 (1985), the Court described the purpose of that law and similar statutes:

> They are a response to the problems arising from the expansion of liability based on the defective and unsafe condition of an improvement to real property. Liability has expanded from the standpoint of potential claimants due to a decline in the availability of defenses based on the absence of privity of contract. . . . In addition, the time following completion within which a damage action might properly be brought had been expanded . . . by determining the time of accrual of a cause of action under the general statute of limitations by using the discovery rule where claims arose out of the construction of improvements to real property. One purpose of the Act is to restrict the operation of the discovery rule. A related purpose of the Act is to limit the time after Completion during which a person may seek contribution or indemnity.

*Id.* at 349 (citations omitted); *see also Anderson v. United States*, 427 Md. at 118 ("The label of statute of repose is used generally to describe a statute which shelters

legislatively-designated groups from an action after a certain period of time." (Citations omitted)).

**The 1973 Recodification**

When the Courts and Judicial Proceedings Article was enacted in 1973, the former Article 57, § 20 was recodified as CJP § 5-108. It retained the owner, tenant, or party in control exception, which was broken out into its own subsection (emphasis added):

> (a) Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.
>
> **(b) This section does not apply if the defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred.**
>
> (c) A cause of action for an injury described in this section accrues when the injury or damage occurs.

While subsections (a) and (b) closely mirrored former Article 57, § 20, subsection (c) was a new addition. The revisor's note states that it was "drafted so as to avoid affecting the period within which a wrongful death action may be brought." Chapter 2, First Special Session, Laws of Maryland 1973 at 211.

## 1979 and 1980: The Statute Is Amended to Further Protect
## Architects, Engineers, and Contractors

Amendments in 1979 and 1980 reduced the time period before which the statute became effective for architects, engineers, and contractors. 1979 Laws of Md., Ch. 698 (architects and engineers); 1980 Laws of Md., Ch. 605 (contractors); *Whiting-Turner Contracting Co. v. Coupard*, 304 Md. 340, 347 (1985) (summarizing the statutory history); *Rose v. Fox Pool Corp.*, 335 Md. 351, 366-367 (setting out the statute's history). These amendments added what is now subsection (b) to establish a 10 year statute of repose for members of those professions. Neither amendment altered the substance of the exception for claims against for owners, tenants, or those in possession and control of the property.

The statute then read (emphasis added):

> (a) Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

> (b) A cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use.

> (c) Upon accrual of a cause of action referred to in subsections (a) and (b), an action shall be filed within 3 years.

> **(d) This section does not apply if the defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred.**

(e) A cause of action for an injury described in this section accrues when the injury or damage occurs.

**The Asbestos Amendments of 1991 (ch. 271 of the laws of 1991)**

The language at issue in this case was added in 1991, when the General Assembly passed, and Governor Schaefer signed into law, Senate Bill 335, which became Chapter 271 of the Laws of 1991.

The legislative history of SB 335 is described in detail in Judge Irma S. Raker's opinion for the Court in *Rose v. Fox Pool,* 335 Md. at 367–71, and there is little to be gained by our attempting to elaborate on the Court's analysis. For our purposes, it is sufficient to state that the 1991 legislation was enacted in response to a series of court decisions concluding that CJP § 5-108, and similar statutes of repose in other states, barred claims against manufacturers of building products containing asbestos. *Rose,* 335 Md. at 367–68.

The first attempt at addressing this problem came during the 1990 Session with the passage of SB 500. This bill was vetoed by Governor William Donald Schaefer.[3]

---

[3] Governor Schaefer's concerns focused on language in SB 500 that stated that it was intended to clarify the intent of the General Assembly when it enacted the original version of the statute of repose in 1970. Governor Schaefer's veto message stated that "our analysis leads us to the conclusion that this bill is not a clarification of the law, but is in fact a major, substantive revision of the Statute of Repose. That fact must not be lost." Letter from Gov. William Donald Schaefer to Thomas V. Mike Miller, Jr., President of the Senate (May 25, 1990). He was also concerned about uncertainty the bill would create: "Senate Bill 500 does not draw a sharp line, but rather would result in inconsistent, indefinite, and difficult to interpret exposure to litigation for many who previously were protected by the statute. This retroactive application of the bill strikes me as particularly unfair." *Id.*

The General Assembly returned to the question of exceptions for asbestos-related claims during the following session with two administration bills, SB 335 and HB 496. The purpose of these bills was to "clarif[y] that a manufacturer or supplier of articles containing asbestos or other material which is reasonably dangerous that is part of an improvement to real property is not exempt from liability for damages or injury under certain conditions." Fiscal Note for SB 335 (1991) (available at the Department of Legislative Reference, Bill File for SB 335). The Senate bill was passed and signed into law, resulting in the current version of CJP § 5-108(d) (emphasis added):

(d)(1) In this subsection, "supplier" means any individual or entity whose principal business is the supply, distribution, installation, sale, or resale of any product that causes asbestos-related disease.

**(2) This section does not apply if:**

**(i) The defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred;**

(ii) **In a cause of action against a manufacturer or supplier for damages for personal injury or death caused by asbestos or a product that contains asbestos**, the injury or death results from **exposure to asbestos dust or fibers which are shed or emitted prior to or in the course of the affixation**, application, or installation of the asbestos or the product that contains asbestos to an improvement to real property;

(iii) **In other causes of action for damages for personal injury or death caused by asbestos or a product that contains asbestos**, the defendant is a manufacturer of a product that contains asbestos; **or**

(iv) **In a cause of action for damages for injury to real property** that results from a defective and unsafe condition of an improvement to real property:

1. The defendant is a manufacturer of a product that contains asbestos;

2. The damages to an improvement to real property are caused by asbestos or a

In the same letter, Governor Schaefer promised to work with interested parties to develop "compromise legislation." *Id.* This compromise legislation was SB 335 and the identical HB 496 of the 1991 Session, which enacted the amendments to CJP § 5-108 that concern us in this appeal.

product that contains asbestos;

3. The improvement first became available for its intended use after July 1, 1953;

4. The improvement:

A. Is owned by a governmental entity and used for a public purpose; or

B. Is a public or private institution of elementary, secondary, or higher education; and

5. The complaint is filed by July 1, 1993.

As noted earlier, this case hinges on the meaning of "or" in subsection (d)(2).

If "or" is used in the disjunctive, then the 1991 amendments added three additional exceptions to the pre-existing exception for actions against persons in possession or control of the property:

(1) actions against manufacturers and suppliers for death or personal injury caused by exposure to asbestos dust or fibers during construction or installation (subsection (d)(ii));

(2) actions against manufacturers, but not suppliers, for deaths and injuries caused by exposure to asbestos in contexts other than construction or installation (subsection (d)(iii)); and

(3) actions by school and public entities against manufacturers, but not suppliers, for damage to property caused by asbestos and asbestos products (subsection (d)(iv)).

If the "or" is conjunctive, then (d)(2)(i), (ii), (iii), and (iv) must be read together to constitute but a single exception that is indeed limited to cases involving asbestos.

On its face, CJP § 5-108(d) sets out four distinct exceptions, one for actions against the owners, tenants, and parties in possession of the property; and the remaining three for claims against asbestos manufacturers or suppliers. There is nothing in the plain text of

the statute that suggests that the General Assembly intended what appear to be four exceptions to be treated as but one exception.

The legislative history for the 1991 law supports this conclusion. It is true that the history does not explicitly address the exception for claims against persons in possession or control of the premises. However, it is clear that the 1991 amendments were intended to add exceptions that operated independently of one another, as opposed to a single multi-part exception applicable to all claims, whether asbestos-related or not, which would be the result of reading "or" in the conjunctive sense.

For example, the Floor Report for SB 335 notes that the bill "excludes certain manufacturers and suppliers of asbestos products from the protection of the 'statute of repose'" before listing the three newly drafted conditions under which the statute of repose does not apply. Senate Judiciary Proceedings Committee Floor Report on SB 335, at 1 (1991). The Floor Report's asbestos-centric description of the bill and silence on the pre-existing exception for an owner, tenant, or party in possession of the property suggests that the asbestos amendments operate separately.

David Iannucci, then serving as Chief Legislative Officer of the Office of the Governor, testified about the bills before the Senate Judicial Proceedings Committee and the House Judiciary Committee. In his testimony, he described the asbestos provisions as dividing the claims into two categories (emphasis in original):

> The bill divides the issue into two categories: personal injury and property damage.
>
> Personal injury. The bill would preserve the right to sue for individuals suffering personal injury from exposure to asbestos before an improvement to real

property was completed (e.g. the construction phase). This includes the right to sue suppliers, as well as manufacturers. (subsection (d)(2)[ii])

The bill would waive the protection of the Statute of Repose for manufacturers of products that contain asbestos, allowing all other individuals to sue for damages for personal injury caused by asbestos. This would allow the remaining 5% of personal injury cases to go forward. (subsection (d)[(2)(iii)])

Property damages. The bill would allow recovery for property damages against manufacturers of products that that contain asbestos under specific circumstances… (subsection (d)[(2)(iv)])

Testimony of David Iannucci on SB 335 and HB 496, before the Senate Judicial Proceedings Committee and the House Judiciary Committee (available at the Department of Legislative Reference, Bill File for SB 335 (underlining in original). In other words, the asbestos provisions in subsection (d)(2)(ii) through (d)(2)(iv) address different types of suits and therefore necessarily operate independently of one other. Mr. Ianucci's discussion of the 1991 amendments was limited to the asbestos-related additions and did not address the owner, tenant, or party in possession exception, underscoring that the 1991 amendments were not intended to impact that exception at all.

The plain language of CJP § 5-108 and its legislative history indicate that each of the exceptions listed in subsection (d)(2) operate independently of one another, with the owner, tenant, or party in possession exception not limited to asbestos-related cases. We see no evidence that the 1991 amendments were intended to alter the already-existing exception for owners, tenants, or others in possession of a property, let alone to limit the scope of that long-standing exception to apply only in asbestos-related cases.

16

## 3. The Interpretive Consequences

Having considered the statute's text and reviewed its legislative history to discern the General Assembly's purpose, we turn to the consequences of the competing approaches advanced by the parties. As we wrote in *Town of Oxford v. Koste,* 204 Md. App. 578, 586 (2012), *aff'd*, 431 Md. 14 (2013), "[a]n examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality." (Citations omitted).

In our view, treating "or" as having a conjunctive meaning in subsection (d) would yield unreasonable results. Were we to apply the conjunctive meaning throughout subsection (d), the subsection would be, literally, meaningless: the subsection would allow for an exception only for actions against manufacturers (and perhaps suppliers) of asbestos products who also happen to be the owners, tenants or other parties in control of the premises where the injury occurred but also only if the premises was a school or government-owned property, and if the complaint was filed prior to 1993.

Even if we apply the owner or tenant requirement separately to each of the asbestos scenarios, the outcomes scarcely improve. It seems unreasonable to limit a suit against an asbestos manufacturer or supplier for claims arising out of installation to situations where the defendant manufacturer or supplier was in possession and control of the property when the injury occurred, as manufactures and suppliers of asbestos products are rarely in control of the property where their products are installed. Similarly, allowing a cause of action by government entities and schools for property damage to be brought against only

manufacturers who were owners or tenants in possession and control of the premises when the injury occurred makes even less sense. These interpretations would limit the exception in such a way as to render it meaningless.

We reject the notion that, in adopting legislation in 1991 that purported to add additional exceptions to the statute of repose, the General Assembly actually intended to limit the exceptions in such a fashion.

### 4. The Non-Significance of Captions and Headings

The task of interpreting CJP § 5-108 is not made easier by the captions and headings added to the text of the statute by the West Publishing and LexisNexis in their respective editions of the Maryland Code.

The caption for § 5-108(d) added by West Publishing is "**Personal injury or death caused by asbestos.**" The LexisNexis caption reads: "'*Supplier' defined*." Neither of these phrases is part of the law and neither should be considered in interpreting the statute.

Section 1-208 of the General Provisions Article ("GP") of the Maryland Code states:

> Unless otherwise provided by law, the caption or catchline of a section or subsection that is printed in bold type, italics, or otherwise:
>> (1) is intended as a mere catchword to indicate the contents of the section or subsection; and
>> (2)(i) may not be considered as a title of the section or subsection; and
>> (ii) may not be considered as a title if the section, subsection, caption, or catchline is amended or reenacted.

There is no shortage of opinions by this Court and the Court of Appeals applying GP § 1-208. *See, e.g.*, *Mayor and City Council of Baltimore v. Hooper*, 312 Md. 378, 388

(1988) ("It seems that Hooper was misled because in the code § 15–607 is headlined, 'Waiver of Sovereign Immunity.' But this phrase does not appear in SB 24 or in ch. 489, Acts 1982. It was not a part of the legislative enactment."); *State v. Holton*, 193 Md. App. 322, 364-65 (2010), *aff'd*, 420 Md. 530 (2011) ("The parties have seized upon that caption as limiting the scope of the statute itself, which we find to be inappropriate and inadmissible. In determining the meaning of a statute, we look to the words of the statute itself, not a caption.").

When headings for individual subsections are added publishing companies as editorial features, as is the case here, they are likewise not part of the statute and should have no effect on its interpretation.[4, 5]

---

[4] As additional support for their statutory interpretation contentions, appellees point to *Mitchell v. WSG Bay Hills IV, LLC*, 2013 WL 6502875, at *2 n. 3 (D. Md. Dec. 11, 2013), in which the District Court noted the bold faced heading "Personal injury or death caused by asbestos" impacted its interpretation of the subsection (d) exceptions. This contention is unpersuasive for two reasons. Initially, *Mitchell* is an unreported decision and this Court does not afford persuasive weight to such opinions "even when the jurisdiction in which the unreported opinion was decided permits the citation of unreported opinions." *Oliveira v. Sugarman*, 226 Md. App. 524, 553, *aff'd*, 451 Md. 208 (2017) (citing *Kendall v. Howard County*, 204 Md. App. 440, 445 n. 1, *aff'd*, 431 Md. 590 (2013). Additionally, and more to the point, the District Court's analysis is not consistent with the settled Maryland decisional and statutory law summarized in the main text of this opinion.

[5] Finally, appellees point to the organization of subsection (d) and emphasize that it begins by defining a "supplier" as an entity selling, distributing, or otherwise involved with supplying products containing asbestos. Appellees argue that the fact that the definition of "supplier" is located before any of the exceptions means that all of the exceptions refer to asbestos-related claims. This argument is unpersuasive for two reasons.

**5. Relevant cases from the Court of Appeals: *Rose* and *Hagerstown Elderly***

Finally, there is some inconsistent dicta regarding the scope of the subsection (d) exceptions.

In *Rose v. Fox Pool Corp.*, 335 Md. 351, 355-56 (1994), a swimmer who was injured diving into a pool sued the manufacturer, arguing that his injury was caused by the pool's defective design and generally unsafe condition. The manufacturer prevailed on its motion for summary judgment on the basis that Rose's claims were barred by CJP § 5-108 because the pool had been installed and in use for over 20 years when the injury occurred. In affirming the judgment, the Court of Appeals undertook an exhaustive analysis of the language, history, and meaning of CJP § 5-108. The Court's focus was on the issue of whether a products manufacturer was covered under the statute. In its analysis, however, the Court drew a distinction between subsection (d)(2)(i) and (d)(2)(ii)-(iv). As to the first, the Court stated that it applied to defendants in possession and control of the property, while subsection (d)(2)(ii)-(iv) all applied to manufacturers and suppliers of asbestos. *Id.* at 360. Later in the opinion, after its discussion of the 1991 asbestos amendments, the Court wrote that "the exclusion of asbestos manufacturers and

---

First, the term "supplier" does not appear in subsection (d)(2)(i), that is, the owner, tenant, or party in possession exception that is the focus of our concern. Second, appellees place too much weight on the way that subsection (d) is organized. That the definition appears first is consistent with the way that Maryland statutes are written and have been written for decades. *See* Dept. of Legislative Services, MARYLAND STYLE MANUAL FOR STATUTORY LAW, 29 (2008) (directing a legislative drafter to "[p]lace a definition at the beginning of the smallest statutory unit, e.g., section or subtitle, to which the definition applies."); Dept. of Legislative Services, MARYLAND STYLE MANUAL FOR STATUTORY LAW, 35 (1985) (same).

suppliers appeared in § 5-108(d) as subsections (d)(2)(ii), (iii) and (iv)." *Id.* at 370. In other words, the *Rose* Court viewed the asbestos-related restrictions as limited to subsection (d)(2)(ii)-(iv) rather than applying to (d) as a whole. Appellants suggest that the *Rose* Court's analysis supports their contentions to us.

In a more recent case, *Hagerstown Elderly Assocs. Ltd. Partnership v. Hagerstown Elderly Bldg. Assocs. Ltd. Partnership*, 368 Md. 351 (2002), the Court considered CJP § 5-108 in the context of a breach of contract action by the owner of a public housing facility against a contractor who installed an exterior wall that failed during a storm, as well as the statute's application to a claim against the contractor's surety. The Court's analysis of CJP § 5-108 focused on subsection (b) of the statute, which addresses when liability terminates for contractors. *Id.* at 358–63. In a footnote, however, the Court stated that subsection (d) "provides an exception to [the operation of the statute] for actions based on injuries arising from exposure to asbestos products. That exception does not apply in this case." *Id.* at 358 n.3. Appellees point to this footnote to support their interpretation of subsection (d).

In *State v. Baby*, Judge Raker's concurring and dissenting opinion considered the distinctions between considered or judicial dicta and ordinary dicta:

> Judicial *dictum* is generally defined as 'an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision.' Statements of judicial *dicta* are technically '*dicta*' because they are not necessary to the holding of a case. They do not, however, implicate to the same degree as ordinary dicta the concern of 'full consideration,' which is one of the rationales for treating dicta and holdings differently. Unlike ordinary *dicta*, judicial *dicta* is, by definition, well-reasoned and stated only after the court has investigated an issue with care. Accordingly,

21

> courts afford judicial *dicta* greater deference than ordinary *dicta,* treating judicial *dicta* almost like holdings.

404 Md. 220, 778-79 (2008) (quoting David Coale & Wendy Coture, *Loud Rules*, 34 PEPP. L. REV. 715, 727-28 (2007)).

The issue in *Hagerstown Elderly* was how CJP § 5-108 applied to breach of contract actions against contractors as well as claims against a surety. The Court's discussion of subsection (d)'s scope was extraneous to the Court's analysis and was not based upon the sort of meticulous examination of the statutory history that the Court undertook in *Rose*. We acknowledge that the situation is an unusual one, but in our view, the Court's analysis in *Rose* carries greater weight than does the footnote in *Hagerstown Elderly*. *Rose* guides our analysis in this case.

**Conclusion**

We hold that CJP § 5-108(d)(2) sets out four independent exemptions to the statute of repose, the first of which is for owners, tenants, or parties otherwise in control of the property where the injury occurred. The pleadings provide a basis to find that one or all of the appellees may fall within that exemption. We will reverse the judgment of the circuit court.

At the circuit court level, CEC raised two issues in addition to its statute of repose argument. The first was appellants' claim is barred by contributory negligence. The second was that the claim was time barred by Maryland's Wrongful Death Act, CJP § 3-904. Subsection (g)(1) of the statute requires most claims under the act to be "filed within three years of the death of the injured person" but by the time appellants filed their suit in

22

the Circuit Court for Anne Arundel County after the federal court dismissed it, more than three years had passed since McLaughlin's death.

We decline to address these issues at this time. This is because "'[o]n appeal from an order entering summary judgment, we review only the grounds upon which the trial court relied in granting summary judgment.'" *Springer v. Erie Ins. Exch.*, 439 Md. 142, 156 (2014) (quoting *River Walk Apartments, LLC v. Twigg*, 396 Md. 527, 541-42 (2007)) (internal citations and quotation marks omitted).

Upon remand, the trial court should rule on the contentions raised by CEC.

**THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY IS REVERSED AND THIS CASE IS REMANDED TO IT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEES TO PAY COSTS.**